Filed 8/25/99 by Clerk of Supreme Court

Modified Sep. 8, 1999

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 173

Sister Colette Werlinger, 

Kimberly Albright, Barbara Johnson,

Linda Fugleberg, Mark Zimmerman,

Sara Disher, Karen Gilbraith, 

Cheryl Rasmussen, Carla Myrum, 

Sheryl Roesler, Bette J. Nelson, Lynne Honrud,

Ellen Lodin, Dale Harold Myrum, Carol J.

Buth, Vicky Palluck, Marianne P. Kalin,

Joan L. Shepel, Tamara Jo Cook, 

Yvette R. Johnson, Belinda Schmidt, 

Lisa Puklich, Murray Moen, Deborah J. 

Anderson, Julie Kay Buth, Lynette Jensen,

Judy Rehder, Connie Bruse, Deedra A. Whalen, 

John Freeman, Sharon R. Bjornson, Elizabeth

M. Hermes, JoNelle A. Kuder, Michelle D. 

Nordick, Jeanette Buerkle, Rebecca J. St. 

Marie, Mary Heiden, Leann Marie Herrmann,

Barbara Ann Odegaard, Laure K. Larson, 

Terri L. Neyens, Gail E. Palmer, Karen Huseth,

Inez Lere, Mary Liebonow, Keatha McLeod,

Lynelle M. Dick, Lori L. Habel, Roxanne 

Myhra, M. Colette Kroeten, Patricia A. Althoff,

Jeanine M. Rau, Joyce Ramsey, Joan J. 

Anderson, Wanda Meyer, John Hoscheid,

Amy Jahnke, Kristine R. Berseth, Julie Boe,

Evelin Heck, Pam Kanenwisher, Jana Stenson,

Theresa R. Hedman, Joan M. Niles, Claudia

Houston, Mary Ann Stibbe, Romona Kuehl,

Diane E. Reese, Diane K. Gorman, Lora 

Wallgren, Lynette Brosowske, Beulah C.

Misheski, Gayle Jean Mosseau, Karen M. 

Haaland-Kelly, Lisa Jorgenson, Marlene E. 

Freeman, Wanda McGray-Moore, Polly Bakko,

Kathleen M. Rue, Peggy J. Abrahamson-Syverson, 

Shirley Hedlund, Donna Stubstad, Colleen P. Frost,

Tamara Hoaglund, Susan M. McCullough, Tamara

Handegard, Peggy Lindstrom, Lynette Anderson,

Julie Lambertz, Kristi J. Bale, Susan Bishoff,

Christie R. Evanger, Bonnie Bredell,

Lael Jean Richards, Darla M. Schmitz, Sharon

Baumler, Andrea K. Jones, Bonnie Halvorson,

Denise M. Gaard, Jean M. Madsen, Patti J. 

Killoran, Judy Anderson, Nancy Cigelski, 

Patricia Hendricksen, Therese Stenger, 

Janel Deane, Wanda L. Davis, Cathy Bitterman,

Doris Jean Gundberg, Dawn M. Brenament, and 

Brenda Kapitan, Plaintiffs and Appellees

v.

Champion Healthcare Corporation, 

a Delaware Corporation, d/b/a “DHHS”

and Dakota Heartland Health System;

Paracelsus Healthcare Corporation of 

North Dakota, Inc., a North Dakota 

Corporation; f/k/a Champion Healthcare 

Corporation of North Dakota, Inc., a 

North Dakota Corporation, individually

and as a partner in Dakota/Champion 

Partnership, a North Dakota general 

partnership, Dakota Medical Foundation, Defendants and Appellants

No. 990027 and 990032

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Cynthia A. Rothe-Seeger, Judge.

REMANDED WITH INSTRUCTIONS.

Opinion of the Court by Neumann, Justice.

James M. Dawson and Catharine F. Haukedahl (argued) of Felhaber, Larson, Fenlon & Vogt, P.A., 601 Second Avenue South, Suite 4200, Minneapolis, MN 55402, and Robert H. Swenson and Sara Gullickson McGrane of Gunhus, Grinnell, Klinger, Swenson & Guy, P.O. Box 2783, Fargo, N.D. 58108-2783, for defendants and appellants Champion Healthcare Corporation, Parcelsus Healthcare Corporation of North Dakota, Inc., and Dakota/Champion Partnership.

Sarah Andrews Herman, Adele Hedley Page (argued), and Kristy L. Albrecht of Dorsey & Whitney, P.O. Box 1344, Fargo, N.D. 58107-1344, for defendant and appellant Dakota Medical Foundation.

Jeff A. Bredahl of Bredahl & Associates, P.O. Box 1029, Fargo, N.D. 58107-

1029, and Michael D. Nelson (argued) and Steven E. McCullough of Ohnstad Twichell, P.C., P.O. Box 458, West Fargo, N.D. 58078-0458, for plaintiffs and appellees.

Werlinger v. Champion Healthcare Corp.

No. 990027 and 990032

Neumann, Justice.

[¶1] Champion Healthcare Corporation, Paracelsus Healthcare Corporation (collectively “Champion Healthcare”), and Dakota Medical Foundation (“Dakota Medical”) appeal from the district court’s order granting class certification under Rule 23, N.D.R.Civ.P.  We remand with instructions.

I

[¶2] On November 1, 1996, Sister Colette Werlinger, and others similarly situated (plaintiffs), filed a complaint in district court seeking class action status under Rule 23, N.D.R.Civ.P., to recover unpaid wages, unpaid overtime, liquidated damages, attorneys’ fees, and other costs under state law.  The plaintiffs identified three subclasses in the complaint:

Class A:  Current employees of Defendant Champion Healthcare’s North Dakota business operations;

Class B: Involuntarily terminated former employees of Defendant Champion Healthcare’s North Dakota business operations; and

Class C: Voluntarily terminated former employees of Defendant Champion Healthcare’s North Dakota business operations.

[¶3] On September 3, 1997, the plaintiffs filed an amended complaint, again seeking class action status.  In the amended complaint, the plaintiffs alleged four separate claims against Champion Healthcare and Dakota Medical.  Claim one, asserted on behalf of members and potential members of all three subclasses, involved meal breaks and Champion Healthcare and Dakota Medical’s failure to comply with state law.  Specifically, the plaintiffs alleged Champion Healthcare and Dakota Medical imposed a business policy that did not allow for an uninterrupted thirty-

minute break for work shifts exceeding five hours, when two or more employees were on duty.  Claim two, asserted on behalf of members and potential members of Class B, alleged Champion Healthcare and Dakota Medical had failed to pay the full amounts of acquired “Earned Time” to members of Class B.  Claim three, asserted on behalf of members and potential members of Class C, alleged Champion Healthcare and Dakota Medical had failed to pay the full amounts of acquired “Earned Time,” to members of Class C.  Under claims two and three, the plaintiffs sought interest on unpaid “Earned Time” as allowed by law.  Claim four, asserted on behalf of members and potential members of all three classes, alleged Champion Healthcare has committed retaliatory acts against the named plaintiffs.  This claim seeks injunctive relief to protect the rights of the named plaintiffs.

[¶4] On November 27, 1998, the district court issued a memorandum opinion and order granting class action certification for all plaintiffs seeking wage claims for earned time and meal breaks, but did not grant class action certification for the plaintiffs seeking retaliation claims.  The district court divided the class action plaintiffs into three subclasses:

(1) Former and current employees with meal break claims, a group which subsequently may be further defined if demonstrated to the Court that meal break claims properly apply to certain types of hospital employees, but not to others;

(2) Voluntarily terminated employees with earned time claims; and

(3) Involuntarily terminated employees with earned time and liquidated damage claims.

[¶5] The sole issue presented on appeal is whether the district court abused its discretion in certifying this case as a class action.

II

[¶6] An order certifying a class action is an appealable order.  N.D.R.Civ.P. 23(d)(3); 
Peterson v. Dougherty Dawkins, Inc.
, 1998 ND 159, ¶ 9, 583 N.W.2d 626; 
Holloway v. Blue Cross of North Dakota
, 294 N.W.2d 902, 906 (N.D. 1980).  The district court has broad discretion in deciding whether to certify a class action under Rule 23(b), N.D.R.Civ.P.  
Peterson
, at ¶ 9.  The district court’s decision will not be overturned on appeal unless the court abuses its discretion.  
Id.
 at ¶ 9.  A district court abuses its discretion only if it acts in an unreasonable, arbitrary, or unconscionable manner.  
Id.
 at ¶ 9.

[¶7] This Court has construed Rule 23, N.D.R.Civ.P., as being very open and receptive toward class actions.  
Old Broadway Corp. v. Hjelle
, 411 N.W.2d 81, 82 (N.D. 1987).  In reviewing an order granting certification, we are mindful of the policy regarding class actions in this state.  
Peterson
, at ¶ 10.

[¶8] In order to certify a class action under Rule 23, N.D.R.Civ.P., four requirements must be satisfied:

1. The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable;

2. There is a question of law or fact common to the class;

3. A class action should be permitted for the fair and efficient adjudication of the controversy; and

4. The representative parties fairly and adequately will protect the interests of the class.

Peterson
, at ¶ 11; 
Old Broadway
, at 83; N.D.R.Civ.P. 23.

[¶9] The district court found all four requirements satisfied regarding earned time and meal break claims.  Champion Healthcare and Dakota Medical appeal, attacking the district court’s rulings as to all four requirements.  We will review all four requirements for abuse of discretion by the district court.

A. Numerosity

[¶10] Champion Healthcare and Dakota Medical argue the district court incorrectly found the plaintiffs satisfied the numerosity requirement for class action certification.  Specifically, Dakota Medical and Champion Healthcare argue the plaintiffs did not show joinder was impracticable, and did not meet their burden of showing numerosity, or number of prospective class members.

[¶11] Regarding its numerosity determination, the district court reasoned:

Plaintiffs believe there are “thousands” of potential class members with similar claims based upon similar facts.  Plaintiffs base their estimate upon a confidential list in the companion federal lawsuit wherein Defendants provide names of more than two-thousand, five hundred (2500) former and current hospital employees.  Plaintiffs’ exhibits in this action include local newspaper articles from 1996, which reflect the number of hospital employees was, at that time, between approximately one-thousand (1000) and one-thousand, three hundred, fifty (1350).

The district court specifically found the “112 named Plaintiffs, with the likelihood that more Plaintiffs exist within and outside of the region, satisfy the numerosity requirement for class certification.”

[¶12] A determination of numerosity must be made “in light of the particular circumstances of the case and generally, unless abuse is shown, the trial court’s decision on this issue is final.”  
Horst v. Guy
, 211 N.W.2d 723, 727 (N.D. 1973) (quoting 3 Moore, Federal Practice 23.05, at 3422 (2d ed. 1964)).  
Horst
 involved forty-eight identifiable members with scattered addresses and the distinct possibility other members existed.  
Id.
 at 726.  In 
Horst
, we held the district court did not abuse its discretion in finding numerosity.  
Id.
 at 727.  

[¶13] Here, one hundred and twelve individuals are identifiable members and there is the distinct possibility others exist in and out of the region.  The district court noted it could not explicitly consider the geographic diversity or concentration of the named and potential members because there was no evidence before it.  However, the district court noted the probability that many of the potential or named members had moved from the region.  The district court may rely on common sense assumptions to support findings of numerosity.  
See
 
Vickery v. Jones
, 856 F. Supp. 1313, 1328 (S.D. Ill. 1994) (“[t]his Court is entitled to make common sense assumptions to support a finding of numerosity”); 
Maywalt v. Parker & Parsley Petroleum Co.
, 147 F.R.D. 51, 55 (S.D.N.Y. 1993) (“precise quantification of the class members is not necessary because the court may make ‘common sense assumptions’ to support a finding of numerosity”); 
see also
 5 James Wm. Moore et al., 
Moore’s Federal Practice
 § 23.22[3][b] (3rd ed. 1997).  With potential members of up to 2,500, we hold the district court’s assumption regarding the likely location of class members and its finding of numerosity were not abuses of discretion because they are not unreasonable, arbitrary, or unconscionable.

B.  Commonality

[¶14] Champion Healthcare argues the district court abused its discretion in finding commonality on the meal break claim because liability under such a claim would be based on highly individualized circumstances.  Dakota Medical argues the district court abused its discretion in finding commonality on the meal break and earned time claims because the plaintiffs have failed to meet the burden of articulating a common question for either claim.

[¶15] In finding the commonality requirement for the wage claims satisfied, the district court explained:

(1) All Plaintiffs are former and current employees of Dakota Hospital or its predecessor hospitals; (2) Plaintiffs’ earned time upon termination was compensated according to policies of the hospital; (3) If defendants followed a common meal break policy or practice, as alleged by Plaintiffs, the policy or practice governed Plaintiffs’ meal break compensation; and (4) Defendants’ liability, or lack thereof, on each wage claim is pursuant to the statutes and administrative regulations applicable to that wage claim.

[¶16] When a question of law refers to standardized conduct by the defendants toward members of a proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement is met.  
Patrykus v. Gomilla
, 121 F.R.D. 357, 361 (N.D. Ill. 1988).  Individual differences in cases concerning treatment or damages do not defeat commonality.  
In re AmeriFirst Securities Litigation
, 139 F.R.D. 423, 428 (S.D. Fla. 1991).  In fact, because only one common question of law or fact is required to satisfy commonality, some courts have classified it as easily satisfied.  
See, e.g.
, 
Baby Neal for and by Kanter v. Casey
, 43 F.3d 48, 56 (3rd Cir. 1994); 
Scholes v. Stone
, 143 F.R.D. 181, 185 (D. Ill. 1992); 
Lockwood Motors Inc. v. General Motors Corp.
, 162 F.R.D. 569, 575 (D. Minn. 1995). 

[¶17] Clearly, this case involves common questions regarding whether there was a company-wide policy that denied employees their proper meal break or whether there was a company-wide policy or practice under which earned time was incorrectly calculated.  The district court did not abuse its discretion in finding commonality.

[¶18] Dakota Medical and Champion Healthcare both challenge whether the plaintiffs have shown the existence of company policies concerning meal breaks or earned time.  It is well settled that a district court must make a determination of class certification without delving into the merits of the case.  
See
 
Eisen v. Carlisle & Jacquelin et al.
, 417 U.S. 156, 177 (1974).  The question is whether the requirements to certify a class action have been met, not whether the plaintiffs will prevail on the merits.  
Id.
 at 178.  The district court properly considered commonality without determining the merits of the case.

C.  Adequate Representation

[¶19] Under Rule 23, N.D.R.Civ.P.(c)(2), the district court must determine the representative parties fairly and adequately protect the interests of the class.  The court must find:

(A) the attorney for the representative parties will adequately represent the interests of the class;

(B) the representative parties do not have a conflict of interest in the maintenance of the class action; and

(C) the representative parties have or can acquire adequate financial resources, considering subdivision (q), to assure that the interests of the class will not be harmed. 

N.D.R.Civ.P. 23(c)(2).

[¶20] The district court found the attorneys representing the plaintiffs have the requisite legal knowledge and experience to adequately represent the class members’ interests in a class action proceeding.  The court did not find a conflict of interest was created by virtue of Bette Nelson, a representative plaintiff, and Sister Colette Werlinger, the first named plaintiff, being related to the class attorneys as wife and aunt, respectively.  The court also found the named plaintiffs can acquire adequate financial resources through advances from themselves, advances from their attorneys’ law firm, and on approval by the district court, advances from the class members.

[¶21] Dakota Medical and Champion Healthcare argue the district court erred when it did not find a conflict of interest to exist between Michael Nelson, a class attorney, and Bette Nelson, a representative party.

[¶22] Concerns for adequacy of representation stem from the need to protect the due process rights of absent class members.  
In re General Motors Corp.
, 55 F.3d 768, 784 (3rd
 
Cir. 1995).  Because of these constitutional underpinnings, adequacy of representation is of critical importance.  
Irvin E. Schermer Trust v. Sun Equities Corp.
, 116 F.R.D. 332, 337 (D. Minn. 1987).  Concerning the matter of close familial relation between a class representative and class counsel, courts have both denied and granted certification.  
Id.
  The primary concern in these cases is whether there is a threat the class representative may have an interest in the attorneys’ fees the class counsel may ultimately receive.  
Id.
  It is not necessary all class representatives meet the adequacy requirement; if one satisfies the requirement the adequacy of representation is met.  
Grasty v. Amalgamated Cloth. & Textile Wkrs. Union
, 828 F.2d 123, 128 (3rd Cir. 1987).

[¶23] In this case, one of the class representatives is the wife of a class attorney.  This is the only class representative attacked on grounds of inadequacy.  There is no evidence in the record, other than the familial relationship itself, to support a charge of collusion between counsel and the representative.  The district court did not abuse its discretion in finding no conflict of interest existed. 

[¶24] Dakota Medical and Champion Healthcare argue the district court erred in determining adequate financial resources exist to assure the interests of the class are protected.  Specifically, Dakota Medical and Champion Healthcare argue there is no evidence to support the court’s findings.

[¶25] Typically, courts do not examine the financial resources of a class representative.  
Dirks v. Clayton Brokerage Co.
, 105 F.R.D. 125, 134 (D. Minn. 1985).  Without contrary evidence or conduct, an affirmative demonstration of willingness or ability to pay will suffice.  
In re McDonnell Douglas Corporation
, 92 F.R.D. 761, 762 (E.D. Mo. 1981) (requiring plaintiffs to attest they would advance costs and not requiring any documentary evidence).  The record shows the named plaintiffs have already advanced money for costs of the litigation.  The district court also noted its power to allow advances from class members under Rule 23(q), N.D.R.Civ.P.  We are unable to say the district court abused its discretion in finding adequate financial resources.

D.  Fair and Efficient Adjudication of the Controversy 

[¶26] Rule 23(b)(2), N.D.R.Civ.P., states an action may be certified if the district court finds (A) the requirements of Rule 23(a) have been satisfied, (B) a class action would permit the fair and efficient adjudication of the controversy, and (C) the representative parties fairly and adequately protect the interests of the class.  The district court’s rulings with regards to 23(a), N.D.R.Civ.P., have been reviewed for an abuse of discretion, as has the court’s rulings concerning the adequacy of the representative parties.  We now review the court’s findings on fair and efficient adjudication.   Rule 23(c)(1), N.D.R.Civ.P., provides a list of thirteen factors
(footnote: 1) the district court must consider in determining whether the class action satisfies the fair and efficient adjudication requirement.  
Peterson
, 1998 ND 159, ¶ 13.  The thirteen factors will weigh either for or against certification.  
Id.
 at ¶ 15.  The district court, employing its broad discretion, must weigh the competing factors and determine whether the class action will provide a fair and efficient adjudication of the controversy.  
Id.
 at ¶ 15.

[¶27] Dakota Medical argues the thirteen factors listed under Rule 23(c), N.D.R.Civ.P., are derived from Rule 23(b), F.R.Civ.P., which creates different types of class actions with different requirements.  While certain phrases from each rule are contained in the other, Rule 23(c), N.D.R.Civ.P., is substantially the same as the Uniform Class Action Rule, and is distinguishable from the federal rule.   
Proceedings on Uniform Class Action Rule Before the National Conference of Commissioners on Uniform State Laws
, Saturday, July 31, 1976, at 58.  As was stated at the presentation of the uniform rule:

[W]e don’t distinguish in this Draft Act between types of class actions.  There is one single type of class action.  We don’t have the “b(1), (b)(2) and (b)(3),” class actions here.  

Proceedings on Uniform Class Action Rule
, at 147.

[¶28] Clearly, the drafters of the Uniform Class Action Rule did not purport to establish a mirror image of Federal Rule 23.  Mindful of that fact, we examine the thirteen factors not to determine if the facts and allegations of the case meet the requirements of any of the separate types of class actions, as under the federal rule, but rather to determine if the single broad category of class action under the uniform rule has been satisfied.

[¶29] The district court found Rule 23(c)(1)(C), (D), and (L), N.D.R.Civ.P., to be inapplicable.   The court did not abuse its discretion in its determination.  

[¶30] The district court found the remaining factors, Rule 23(c)(1)(A), (B), (E), (F), (G), (H), (I), (J), (K), and (M), N.D.R.Civ.P., to weigh in favor of class certification.  Dakota Medical and Champion Healthcare challenge the court’s findings on those remaining factors.  As to the factors other than (A) and (B), which will be discussed later, they argue:  (1) the claims asserted by the plaintiffs are highly individualized; (2) the court misunderstood and incorrectly analyzed the companion federal case; and (3) the court improperly disregarded the plaintiffs’ administrative remedies.

[¶31] Dakota Medical and Champion Healthcare argue the plaintiffs in this case have highly individual claims which will not allow for proper representative testimony.   Consequently, Dakota Medical and Champion Healthcare assert this proceeding should not be a class action. Variations on this argument were made with regards to Rule 23(c)(1)(E), common question of law or fact, (H), individual interest in controlling the action, and (K), management of the class.

[¶32] The district court found common questions of law or fact predominate over questions affecting individual members because common legal questions exist involving interpretation of the applicable statutes and administrative regulations, and common factual questions exist regarding the existence or non-existence of wage policies of Dakota Medical and Champion Healthcare’s hospitals.

[¶33] There is no precise test governing the determination of whether common questions predominate over individual claims.  5 James Wm. Moore et al., 
Moore’s Federal Practice
 § 23.46[1] (3rd
 
 ed. 1997).  Rather, a pragmatic assessment of the entire action and all of the issues is involved in making the determination.  
Rodriguez v. Carlson
, 166 F.R.D. 465, 477 (E.D. Wash. 1996).  For common questions to predominate, it is not necessary the individual claims be carbon copies of each other.  
Vignaroli v. Blue Cross of Iowa
, 360 N.W.2d 741, 745 (Iowa 1985) (interpreting the same uniform class action rule).  “Predominate” should not be automatically associated with “determinative” or “significant,” and consequently when one or more central issues to the action are common and can be said to predominate, the class action will be proper.  
Id.
   Class certification is not to be refused merely because individual issues will remain even after disposition of common issues.  
Rogelstad v. Farmers Union Grain Terminal Ass’n Inc.
, 226 N.W.2d 370, 378 (N.D. 1975).  The common issues need not dispose of the case, and the presence of individual issues is of no obstacle to proceeding as a class action.  
Id.
  

[¶34] In 
Rogelstad
, it was alleged grain elevators were charging usurious interest rates.  
Id.
 at 373.  The district court found commonality did not exist because potential members might have entered into different types of contracts with the grain elevators, and interpretation of those contracts would control the resolution of the case among the parties to the contract.  
Id.
  We reversed, holding commonality existed because all the plaintiffs would present the same evidence as to the interest rate charged, the bookkeeping methods of Grain Terminal Association (“GTA”), and the relationship of GTA to local elevators.  
Id.
 at 378.  The common legal question would be whether GTA charged a usurious interest rate.  
Id.
  After hearing the common question, GTA would be entitled to a decision in its favor or the class plaintiffs would need to prove their individual damages.  
Id.

[¶35] In 
Saba v. Counties of Barnes et al.
, 307 N.W.2d 590 (N.D. 1981), it was alleged the counties negligently seeded clouds over the city of Bismarck causing heavy rains which resulted in property damage to the plaintiffs.  
Id.
 at 592.  The district court denied certification as a class action.  
Id.
 at 593.  We affirmed, noting the common question of law or fact analysis of the case was unlike that of 
Rogelstad
.  
Id.
 at 594.  Unlike 
Rogelstad
, in which computing individual damages would amount to an accounting process, in 
Saba
 even if the defendants were found to have negligently seeded the clouds it would still have to be individually determined whether the negligence was the proximate cause of damage to each member of the class.  
Id.

[¶36] As Dakota Medical and Champion Healthcare have argued, individual issues are present in this case.  However, we think this case is closer to 
Rogelstad
 than 
Saba
.  There are some questions to be answered individually for class members, but, as noted, individual issues do not defeat or preclude a finding of predominance.   As the district court found, there are common issues regarding the existence of the defendants’ policies, issues which predominate.  The district court did not abuse its discretion in so finding.    Because common questions predominate, we also hold the district court did not abuse its discretion in finding interest in individual control would not weigh against class action status, and that manageability of the class action would not weigh against class action status.

[¶37] Dakota Medical and Champion Healthcare argue the district court either misunderstood the posture of the parallel federal case or misunderstood the effect of the federal case on state class action certification.  This argument was based on Rule 23(c)(1)(F), “whether other means of adjudicat[ion] . . . are impracticable or inefficient;” (G), “whether a class action offers the most appropriate means of adjudicat[ion] . . . ;”  (I), “whether the class action involves a claim that is or has been the subject of  . . . [another] proceeding;”  (J), “whether it is desirable to bring the class action in another forum;”  and (M), costs of litigating individually.

[¶38] Much of Dakota Medical and Champion Healthcare’s arguments concerning the similar federal case stem from the district court’s statement “[t]he federal court’s position is it will decline to exercise supplemental jurisdiction in deference to this Court’s adjudication of Plaintiffs’ state law claims; the federal proceeding will not address the same claims.”  Champion Healthcare and Dakota Medical argue this statement shows the court’s fundamental misunderstanding of the federal action and renders its decision under Rule 23(c)(1)(F), (G), (I), (J), and (M), N.D.R.Civ.P., an abuse of discretion.  We disagree.

[¶39] A careful review of all documents contained in the record on appeal reveal the district court's understanding of the federal case is not as arbitrary as Dakota Medical and Champion Healthcare argue.  Although supplemental jurisdiction under 28 U.S.C. § 1367 has been exercised on the state law claims before the federal district court, we do not find an abuse of discretion by the district court.  As Champion Healthcare noted in its memorandum of law to the federal district court, 28 U.S.C. § 1367(c)(1), and (4), allow a federal court to decline exercising jurisdiction in instances when the state claim is novel or of first impression.  The state district court was aware of this, as evidenced by the analysis under Rule 23(c)(1)(G), N.D.R.Civ.P., when the court noted issues of first impression on state law were involved in the case.

[¶40] Additionally, it does appear from the record the district court and the federal court have an open line of communication concerning the two cases.  Complex litigation, spanning state and federal courts, requires coordination between the courts. 
Manual for Complex Litigation
 § 31.31 (3rd ed. 1995).  The record reveals such coordination between these courts (though it does leave us to wonder what, if anything, may have occurred "off the record").  A letter dated November 24, 1997, from Chief Judge Rodney S. Webb states he had agreed to resolve the state law claims if the parties stipulate to it.  In that same letter, Chief Judge Rodney S. Webb later states, "[i]f a stipulation cannot be agreed upon by the parties, I will expect to receive a motion for dismissal of state court claims."  In another letter dated May 13, 1998, addressed to the state district court from Chief Judge Webb, Judge Webb states he "informed plaintiffs' counsel that [he] would not permit the federal court case to go forward on a parallel track with the state court case."  Based on the record before us, we cannot say the district court abused its discretion when it noted the federal court would defer to it on state law claims.

[¶41] Dakota Medical and Champion Healthcare argue the district court incorrectly disregarded the plaintiffs’ administrative remedy, referring to Rule 23(c)(1)(F), (G), and (M), N.D.R.Civ.P.  The district court noted throughout its findings it did not consider whether administrative remedies available through the North Dakota Department of Labor would render a class action impractical or inefficient.  The court noted the option of an administrative remedy, if considered, would have the operative effect of restricting or precluding the plaintiffs’ access to the advantages of a class action.

[¶42] Administrative remedies as an alternative form of litigation or claim resolution may be a factor in determining class action certification.  
See
 Herbert B. Newberg & Alba Conte, 
Newberg on Class Actions
 § 4.27 (3rd ed. 1992).  
But see
 5 James Wm. Moore et al., 
Moore’s Federal Practice
 § 23.48 (3rd ed. 1997) (listing individual judicial actions, test cases, consolidation, intervention, and joinder as various methods of litigation).   Dakota Medical and Champion Healthcare argue the administrative  remedies provided by the North Dakota Department of Labor and enacted as the Wage Collection Act in N.D.C.C. ch. 34-14 bar a private right of action until the administrative remedies are exhausted.  However, before deciding the impact of an administrative remedy on this class action, we note the district court found an implied private right of action.  Courts engage in statutory construction analysis to determine whether an implied private right of action is available.  
R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass’n
, 315 N.W.2d 284, 287 (N.D. 1982).  An implied private right of action must be within the statutory scheme to exist.  
Id.

[¶43] Interpretation of a statute is a question of law fully reviewable by this Court.  
Feist v. North Dakota Workers Comp. Bureau,
 1997 ND 177, ¶ 8, 569 N.W.2d 1.  "The primary goal when interpreting a statute is to ascertain the legislative intent."  
State v. Hafner
, 1998 ND 220, ¶ 10, 587 N.W.2d 177.  In construing a statutory provision we consider the entire enactment of which it is a part and, to the extent possible, interpret the provision to be consistent with the intent and purpose of the entire Act.  
Payne v. Board of Trustees
, 76 N.D. 278, 286, 35 N.W.2d 553, 558 (1948);  
Coverston v. Grand Forks County,
 74 N.D. 552, 558, 23 N.W.2d 746, 749 (1946).  The district court therefore properly considered the intent and purpose of N.D.C.C. §§ 34-14-05, 34-14-08, and 34-14-09, and the entire Wage Collection Act.

[¶44] When interpreting a statute, we first look to the language of the statute itself and determine whether it is unambiguous.  
R.B.J. Apartments, Inc.
, 315 N.W.2d at 289.  If the statutory language is unambiguous, we apply the plain language of the statute.  
Id.
  A statute which is susceptible to differing, but rational, meanings, is ambiguous.  
See
  
Medcenter One, Inc. v. N.D. State Bd. of Pharm.
, 1997 ND 54, ¶ 13, 561 N.W.2d 634.  If the language of a statute is ambiguous, we look to extrinsic aids, such as legislative history and administrative construction, to determine the legislature’s intent.  
State v. Eldred
, 1997 ND 112, ¶ 19, 564 N.W.2d 283;  N.D.C.C. § 1-02-39.

[¶45] The parties in this case strongly disagree on the interpretation and legislative intent of the Wage Collection Act.  Dakota Medical and Champion Healthcare assert the statutory language requires exhaustion of the administrative remedies available at the Department of Labor before a wage claimant can proceed with a judicial action.  This argument is supported by the lack of express language providing for a private right of action in the act and the administrative remedies provided by the act.  The plaintiffs contend the statutory language provides wage claimants with an administrative remedy and also permits an implied private right of action.  The legislative history and administrative construction of N.D.C.C. ch. 34-14 provides support for the plaintiffs’ position.  The district court did not err in finding the statute is ambiguous.  

[¶46] The plaintiffs’ interpretation of the statute is supported by the legislative committee minutes of a 1973 amendment to N.D.C.C. § 34-14-08.  During committee hearings, Department of Labor personnel recognized private civil suits as an additional option for wage claimants.  The testimony reveals the statute originally had a $500 limitation on claims the Department of Labor would accept.  This amount was removed because private attorneys were unwilling to accept wage claim suits just over the dollar limitation.   There is also no evidence in N.D.C.C. ch. 34-14 legislative history suggesting the legislative amendment omitting the $500 limitation was intended to remove and not supplement a claimant’s option to enforce the claim in a civil action.  
See
 
Hearing on S.B. 2089 Before the House Industry, Business, and Labor Comm.
, 43rd N.D. Legis. Sess. (Feb. 20, 1973) (testimony of Al Thompson, North Dakota Department of Labor).

[¶47] Additionally, administrative construction supports the plaintiffs’ interpretation of the statute.  Attorney General opinions guide state officers until superseded by judicial decision.  
State ex rel. Johnson v. Baker
, 74 N.D. 244, 259, 21 N.W.2d 355, 364 (N.D. 1945).  Although not binding on this Court, Attorney General opinions interpreting statutes are entitled to respect and we will follow them if they are persuasive.  
United Hosp. v. D'Annunzio
, 514 N.W.2d 681, 685 (N.D. 1994);  
State v. Beilke,
 489 N.W.2d 589, 593 (N.D. 1992).   The North Dakota Attorney General advised the Department of Labor on two separate occasions that wage claimants have the option of initiating a private suit.  N.D. Letter Op. Atty. Gen., February 13, 1992, (responding to opinion request from Craig Hagen, Commissioner of Labor); N.D Letter Op. Atty. Gen., September 20, 1982, (responding to opinion request from Orville Hagen, Commissioner of Labor).  We find these opinions persuasive, read in conjunction with the Wage Collection Act’s legislative history.

[¶48] The district court did not err in finding an implied private right of action.  This case therefore does not involve principles of administrative exhaustion.  An individual with a private right of action has the option to proceed either by way of the judicial system, or by way of the administrative scheme present within the applicable governmental agency.  
Riley v. Boxa
, 542 N.W.2d 519, 522 (Iowa 1996) (citing 
Charles Gabus Ford, Inc. v. Iowa St. Highway Commission
, 224 N.W.2d 639, 647 (Iowa 1974)).  Dakota Medical and Champion Healthcare argue the administrative process would be more efficient, but have failed to provide evidentiary support.  We are, therefore, unable to give the argument any more weight than that accorded a bare assertion.  While the availability of a more efficient administrative remedy would certainly be a relevant consideration, based on the record before us we cannot say the district court abused its discretion regarding the impact of the possible administrative remedy on class certification.

III

[¶49] The district court ruled Rule 23(c)(1)(A), N.D.R.Civ.P., (joint or common interest) weighed in favor of class certification because the plaintiffs relied on the same policies and practices of the same employer and its predecessors.  Because the district court’s ruling was based on a misinterpretation of the meaning of  “joint or common interest,” we cannot be sure the district court has not abused its discretion in weighing this factor in favor of certification.

[¶50] Historically, class actions were divided into three categories:  true, spurious, and a hybrid of the first two. 7A Charles Alan Wright et al., 
Federal Practice and Procedure
 § 1752, at 16 (2d ed. 1986).  A true class action was one in which all plaintiffs have a common and undivided interest in the subject matter of the suit.  
Knowles v. War Damage Corp.
, 171 F.2d 15, 17 (C.D.C. 1949).  Issues determined in a true class action were res judicata for any member of the class, even though a person might never have been a party to the action.  
Id.
 at 18.  In a so-called spurious class action, the rights sought to be enforced are “several, and there is a common question of law or fact affecting the several rights and a common relief is sought.”  
Id.
  In this type of suit, joinder into a class action is a matter of economy and efficiency on the part of the courts and parties, and individuals not joining are not bound by the decision.  
Id.

[¶51] 
Rule 23(c)(1)(A), N.D.R.Civ.P., contemplates a joint interest similar to the old “true” class action as evidenced by Rule 23(h)(1) prohibiting exclusion from the class if an affirmative finding is made under Rule 23(c)(1)(A), or put differently, if a mandatory class action is found.

[¶52] Here, the joint interest found by the district court is merely a possible common question of fact or law.  It does not reach the level of a joint or common interest which would give rise to a mandatory class action.  Therefore, the district court erred in finding a joint or common interest existed among the plaintiffs. 

[¶53] The district court ruled Rule 23(c)(1)(B) (incompatible standards) weighed in favor of class certification because “[i]ndividual adjudications, whether by an administrative agency, several small claims courts, or several district courts, are more likely to render inconsistent results.”  The district court misinterpreted the meaning of  “incompatible standards,” and consequently, erred in applying this factor.

[¶54] Rule 23(c)(1)(B), N.D.R.Civ.P., states:

(B) whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class.

Generally, incompatible standards occur when the party opposing the class would be unable to comply with one judgment without violating the terms of another judgment.  5 James Wm. Moore et al., 
Moore’s Federal Practice
 § 23.41[2][a] (3rd ed. 1997)
 
.  

[¶55] Here, the main premise of the district court’s finding seems to be that results could differ among the many plaintiffs if their claims were adjudicated individually.  This is not a risk of incompatible standards.  Generally, different results in actions for money damages do not qualify as incompatible standards.  5 James Wm. Moore et al., 
Moore’s Federal Practice
 § 23.41[5][a] (3rd ed. 1997).  Courts reason a defendant is not subject to incompatible standards merely through the risk of being found liable to some plaintiffs and not to others.  
Id.
   We hold the district court abused its discretion in finding a risk of incompatible standards based on nothing more than the possibility of inconsistent results as to liability.

IV

[¶56] No one factor of the thirteen under Rule 23(c)(1), N.D.R.Civ.P., predominates over the others.  
Peterson
, 1998 ND 159, ¶ 14, 583 N.W.2d 626.  Nor must the district court explicitly address all of the factors.  
Id.
 at ¶ 14.  However, the district court may not rest its decisions on factors analyzed incorrectly.  Here, while most of the district court’s rulings are affirmable, the district court apparently relied in some part on incorrect analyses of the joint or common interest factor under Rule 23(c)(1)(A), and the inconsistent standards factor under Rule 23(c)(1)(B), in reaching its ultimate determination to grant class certification.  Because the extent to which the district court may have relied on these flawed analyses in reaching its conclusion is not clear to us, we must remand the case for a determination of the class certification question based on a correct consideration of the Rule 23(c)(1) factors.  The case is remanded for further proceedings consistent with this opinion.

[¶57] William A. Neumann

Carol Ronning Kapsner

Dale V. Sandstrom

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
  “ In determining whether the class action should be permitted for the fair and efficient adjudication of the controversy . . . the court shall consider, and give appropriate weight to, the following [thirteen] and other relevant factors: 

(A) whether a joint or common interest exists among members of the class;  

(B) whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class;  

(C) whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;  

(D) whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole;  

(E) whether common questions of law or fact predominate over any questions affecting only individual members; 

(F) whether other means of adjudicating the claims and defenses are impracticable or inefficient;  

(G) whether a class action offers the most appropriate means of adjudicating the claims and defenses;  

(H) whether members not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions;  

(I) whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding;   (J) whether it is desirable to bring the class action in another forum;  

(K) whether management of the class action poses unusual difficulties;  

(L) whether any conflict of laws issues involved pose unusual difficulties;  and  

(M) whether the claims of individual class members are insufficient in the amounts of interest involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.”  N.D.R.Civ.P. 23(c)(1).