Filed 6/3/04 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2004 ND 113

Virginia Bice, Helen A. and Hillis J. Bice, 

Helen A. Bice Life Estate, Naomi Brew, 

Patricia Burian Ingman, Myran S. and 

Mary C. Burian, Estate of Steve Burian,

Arnold and Sharon Burian, Connie F. 

Burian Heck, Jane Elizabeth Kiker,

Elmer L. Glovatsky, Timothy Glovatsky, 

Shirley and Lawrence W. Jablonsky,

Leo and Selina Kaiser, Russell L. Kiker,

Russell L. Kiker Trust, Sally A. Kiker Trust,

Ardyce Burian Palaniuk, Irene E. Scott

Mineral Trust, Jane Scott, William D. and

Agnes M. Scott, Ervin and Mildred Waldie,

Gregory Lynn Waldie, Mary M. Weber,

Martin A. Weber, Jerry Zabalotny,

William D. Walters, Jr., Imperial Oil

Company c/o William D. Walters, Jr.,

Lillian Hardcastle a/k/a Lillian Kaiser,

Robert T. Smith, Carrie W. Smith, Plaintiffs and Appellees

v.

Petro-Hunt, L.L.C., J.W. Beavers, Jr., 

as Trustee of William Herbert Hunt 

Trust Estate, Defendants and Appellants

No. 20030306

Appeal from the District Court of Billings County, Southwest Judicial District, the Honorable Zane Anderson, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Jane L. Dynes (argued) and Ronald H. McLean, Serkland Law Firm, P.O. Box 6017, Fargo, N.D. 58108-6017, and Marvin L. Kaiser (appeared), Kaiser Law Firm, P.O. Box 849, Williston, N.D. 58802-0849, for plaintiffs and appellees.

John W. Morrison, Jr., Fleck, Mather & Strutz, P.O. Box 2798, Bismarck, N.D. 58502-2798, for defendants and appellants.

Bice v. Petro-Hunt, L.L.C.

No. 20030306

Sandstrom, Justice.

[¶1] Petro-Hunt, L.L.C., and  J.W. Beavers, Jr., as Trustee of William Herbert Hunt 

Trust Estate (collectively “Petro-Hunt”), appealed an order granting a motion for class certification in an action brought by Virginia Bice, Helen A. and Hillis J. Bice, Helen A. Bice Life Estate, Naomi Brew, Patricia Burian Ingman, Myran S. and Mary C. Burian, Estate of Steve Burian, Arnold and Sharon Burian, Connie F. Burian Heck, Jane Elizabeth Kiker, Elmer L. Glovatsky, Timothy Glovatsky, Shirley and Lawrence W. Jablonsky, Leo and Selina Kaiser, Russell L. Kiker, Russell L. Kiker Trust, Sally A. Kiker Trust, Ardyce Burian Palaniuk, Irene E. Scott Mineral Trust, Jane Scott, William D. and Agnes M. Scott, Ervin and Mildred Waldie, Gregory Lynn Waldie, Mary M. Weber, Martin A. Weber, Jerry Zabalotny, William D. Walters, Jr., Imperial Oil Company c/o William D. Walters, Jr., Lillian Hardcastle a/k/a Lillian Kaiser, Robert T. Smith, and Carrie W. Smith (collectively “Owners”).  We conclude the trial court did not abuse its discretion in granting class certification, and we affirm.

I

[¶2] The Owners own mineral or royalty interests under oil, gas, and mineral leases within the Little Knife Field in Dunn, Billings, and McKenzie Counties.  Petro-Hunt owns the majority of the working interest in many oil and gas wells within the Little Knife Field and is the operator of the Little Knife Gas Plant.  Petro-Hunt treats and processes casinghead gas from wells in which the Owners have interests at the gas plant and then sells the residue gas to third parties.  The value of the gas is determined by adding all the sources of revenue from sale of the gas and gas products, and subtracting certain costs associated with treating and processing the gas.

[¶3] The Owners sued Petro-Hunt, alleging they have been underpaid royalties due them.  The Owners alleged, among other things:

19.  Petro-Hunt L.L.C. and its predecessors including the Hunt Trust Estate, have paid all of the royalty owners from the Little Knife Field on the same basis, regardless of whether or not they were parties to any agreement, and without regard to individual lease forms or other contracts.

20.  The Defendants have underpaid royalties due them by various methods including, but not limited to inappropriately charging costs and expenses associated with compressing and treating the produced gases, charging for excess depreciation and improper charges as to risk capital.  In addition, the defendants failed to pay for processed gas returned and consumed at central tank batteries which properly is a cost of operation and should be borne by the operator.

The complaint asserted one count for failure to pay the proper royalty under lease provisions requiring Petro-Hunt to produce and deliver a marketable product, and six other counts for breach of an implied covenant to market hydrocarbons, conversion, unjust enrichment, an accounting, breach of an implied covenant of good faith and fair dealing, and declaratory relief.  

[¶4] The Owners moved for an order certifying the matter as a class action under N.D.R.Civ.P. 23 and certifying a “plaintiff class consisting of all owners of mineral and/or royalty interests or overriding royalty interests under oil, gas and mineral leases located within the Little Knife Field of Dunn, Billings and McKenzie counties during the time of the operation of the field and gas plant by Petro-Hunt and its predecessor, the William Herbert Hunt Trust Estate.”  The trial court certified the matter as a class action and Petro-Hunt appealed, contending the trial court abused its discretion in certifying the class.

[¶5] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The appeal was timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, N.D.C.C. § 28-27-02, and N.D.R.Civ.P. 23(d)(3).  

II

[¶6] A trial court may certify a class action under N.D.R.Civ.P. 23 if the following requirements are satisfied:

. The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable;

. There is a question of law or fact common to the class;

. A class action should be permitted for the fair and efficient adjudication of the controversy; and

. The representative parties fairly and adequately will protect the interests of the class.

Old Broadway Corp. v. Hjelle
, 411 N.W.2d 81, 83 (N.D. 1987).  Petro-Hunt contends requirements 2, 3, and 4 have not been met.

[¶7] We have consistently construed N.D.R.Civ.P. 23 to provide an open and receptive attitude toward class actions.  
Howe v. Microsoft Corp.
, 2003 ND 12, ¶ 7, 656 N.W.2d 285.  In 
Rogelstad v. Farmers Union Grain Terminal Ass’n, Inc.
, 226 N.W.2d 370, 376 (N.D. 1975), we noted that class actions “have always been recognized and encouraged under our laws since prior to Statehood.”  Rule 23, N.D.R.Civ.P., is a remedial rule for efficient resolution of the claims or liabilities of many individuals in a single action, eliminating repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and providing an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits.  
Rogelstad
.  An order certifying a class action under N.D.R.Civ.P. 23 is appealable, but a trial court’s decision to certify a class action will not be overturned on appeal unless the court abused its discretion.  
Saba v. Counties of Barnes
, 307 N.W.2d 590, 593 (N.D. 1981).  

III

[¶8] Petro-Hunt contends “[t]he trial court erred in finding that a ‘common question of law or fact’ exists,” arguing: 

Without establishing the existence of a lease provision, contract term, or statutory provision common to the members of the class which entitles them to be paid gas royalties in a certain manner or on a certain value, or which entitles all of the members of the class to receive royalty on gas used in connection with production activities, there is no single question of any consequence which, when answered as to one class member, will be answered as to all class members.

[¶9] We have said that because only one question of law or fact is required to establish commonality, courts have classified it as easily satisfied under the rule. 
Klagues v. Maintenance Eng’g
, 2002 ND 59, ¶ 23, 643 N.W.2d 45.  “
W
hen a question of law refers to standardized conduct by the defendants toward members of a proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement is met.”  
Werlinger v. Champion Healthcare Corp.
, 1999 ND 173, ¶ 16, 598 N.W.2d 820
.  “Individual differences in cases concerning treatment or damages do not defeat commonality.”  
Id.

[¶10] The Owners’ complaint asserts, “Petro-Hunt L.L.C. and its predecessors . . . have paid all of the royalty owners from the Little Knife Field on the same basis, regardless of whether or not they were parties to any agreement, and without regard to individual lease forms or other contracts.”  In its answer, Petro-Hunt asserts, in part:

Admit that the defendants have, since 1992, paid gas royalties on the basis of the terms of the oil and gas leases with the various owners, which generally provide for royalties to be paid upon the “market value of the gas at the well,” and that such market value can be and has been determined through the use of a work-back calculation, described in paragraph 17 of plaintiffs’ complaint as “adding all of the sources of revenue from the sale of gas and gas products and subtract therefrom certain costs associated with the processing of that gas.”

Petro-Hunt argues, “the record amply demonstrates that there are at least two different lease forms covering the interests owned by members of the class.”  However, Petro-Hunt also asserts in its brief that it has been paying royalties in accordance with a 1983 royalty agreement with a group of royalty owners.

[¶11] As the trial court observed, “Defendants are alleged to have calculated royalties for each plaintiff in the same way regardless of lease language,” and “[t]he propriety or legality of the deductions taken from royalty payments made to all these plaintiffs is in question.”  Petro-Hunt’s standardized payment to royalty owners suggests that while lease provisions may vary, the import of the provisions is the same.  We conclude that Petro-Hunt’s standardized conduct toward the royalty owners presents a common nucleus of operative facts meeting the commonality requirement of N.D.R.Civ.P. 23.  
Werlinger
, 1999 ND 173, ¶¶ 14-17, 598 N.W.2d 820.  We conclude the trial court did not abuse its discretion in finding commonality.

IV

[¶12] Petro-Hunt contends the trial court erred in finding a class action should be permitted for the fair and efficient adjudication of the controversy. 

[¶13] Rule 23(c)(1), N.D.R.Civ.P., lists thirteen factors for consideration in determining whether a class action should be permitted for the fair and efficient adjudication of the controversy:

(A) whether a joint or common interest exists among members of the class;

(B) whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class;

(C) whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

(D) whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole;

(E) whether common questions of law or fact predominate over any questions affecting only individual members;

(F) whether other means of adjudicating the claims and defenses are impracticable or inefficient;

(G) whether a class action offers the most appropriate means of adjudicating the claims and defenses;

(H) whether members not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions;

(I) whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding;

(J) whether it is desirable to bring the class action in another forum;

(K) whether management of the class action poses unusual difficulties;

(L) whether any conflict of laws issues involved pose unusual difficulties;  and

(M) whether the claims of individual class members are insufficient in the amounts of interest involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.   

The trial court made findings on all of the factors, some favoring certification and others not favoring certification.  Petro-Hunt has challenged only the trial court’s determinations on factors C, E, F, G, H, and K.

[¶14] In determining whether a class action will provide a fair and efficient adjudication of the controversy, the trial court is not required to specifically address each of the thirteen factors but must weigh the competing factors, none of which is predominant.  
Howe
, 2003 ND 12, ¶ 9, 656 N.W.2d 285.  In most cases, some of the thirteen factors will weigh against certification, and some will weigh in favor of certification.  
Id.
  The fact that some factors weigh against certification does not preclude the trial court “‘from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification.’”  
Id.
 (quoting 
Peterson v. Dougherty Dawkins, Inc.
, 1998 ND 159, ¶ 15, 583 N.W.2d 626).

A

[¶15] In addressing factor C, the trial court said, among other things:

This court is convinced that the precedential effect of this litigation combined with the history of treating all the royalty owners the same would as a practical matter be dispositive of the interests of other members not parties to this action or substantially impair or impede their ability to protect their interests.  The present action also seeks declaratory relief and not just money damages.  The request for declaratory relief also supports the plaintiffs’ argument that adjudication as a practical matter could be dispositive of the interests of non-parties.

[¶16] The precedential effect of a decision in individualized litigation “alone should not be the basis for class certification under” N.D.R.Civ.P. 23(c)(1)(C), “but precedent plus some other practical factor could be sufficient to qualify as a class under this factor.”  
Klagues
, 2002 ND 59, ¶ 17, 643 N.W.2d 45.  In light of the precedential effect of this litigation, the history of similar treatment of all royalty owners, and the request for declaratory relief in addition to damages, we are unable to conclude the trial court erred in concluding “the precedential effect of this litigation . . . would as a practical matter be dispositive of the interests of other members not parties to this action or substantially impair or impede their ability to protect their interests.”

B

[¶17] In addressing factor E, the trial court said, among other things:

Plaintiffs’ main theory of recovery is that defendants have a duty as operators under the oil and gas leases to produce the first marketable product. . . .  This issue was not squarely addressed in 
Amerada Hess Corp. v. Conrad
, 410 N.W.2d 124 (N.D. 1987) and appears to be unsettled law in North Dakota.  The fact that all royalty owners are paid and have been paid under one existing method of payment also supports the assertion that common issues predominate over individual issues.

As this litigation develops there may be the need to develop subclasses.  Plaintiffs concede that this might be appropriate because of lease forms or class members’ involvement in prior litigation.  The Court has the ability to decertify the class or to establish other classes or subclasses.  
Howe v. Microsoft Corp.
, 
supra
, at ¶ 17. At this stage of proceedings common questions of law or fact predominate and this factor favors class certification.

[¶18] Petro-Hunt contends, “[c]ommon questions of law or fact do not predominate in the absence of any showing of common lease terms among class members.”  Petro-

Hunt argues:

As noted above, the one controlling and overriding issue in determining whether expenses incurred in processing and treating gas can be deducted from sales receipts of finished products before computing royalty is the interpretation of the “terms and provisions of the given lease.”  There is no showing in this case that the same or even similar royalty provisions are included in the leases to which the class members are parties. . . .  Neither the trial court nor the plaintiffs have identified any questions of law or fact to be resolved other than whether the deductions are authorized by the leases and whether the residue gas used in production operations is free of royalty.  Neither of these questions can be resolved without resort to the leases of the owners.  Without some showing that there are common or similar lease terms, common questions of law or fact cannot be said to predominate over the individual questions.

[¶19] The Owners have raised questions about the propriety of deductions for expenses incurred in processing and treating gas and about Petro-Hunt’s use of gas.  The Owners have alleged that Petro-Hunt and its predecessors have treated all of the royalty owners the same, regardless of individual lease provisions.  Petro-Hunt has said it has been paying royalties in accordance with leases generally providing for royalties based on the “market value of the gas at the well,” which is determined through a specified calculation, in accordance with a 1983 royalty agreement with a group of royalty owners, and that “all royalty owners in Little Knife are treated the same with regard to gas royalties.”  The similarity in treatment of owners regardless of individual lease terms strongly suggests there are common lease terms or, if not, that differing lease terms are similar in import or treated as being common or similar in import.  In light of the parties’ assertions about similar treatment, we are unable to conclude the trial court was not justified in determining that common questions of law or fact predominate.

[¶20] If, as Petro-Hunt asserts, “the record amply demonstrates that there are at least two different lease forms covering the interests owned by members of the class,” and those differing lease forms require differing treatment, the trial court may find it appropriate to establish subclasses or to eliminate some class members from the class, as authorized by N.D.R.Civ.P. 23(e)(1).  As we noted in 
Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.
, 2001 ND 56, ¶ 23, 623 N.W.2d 424, a trial court may create subclasses, exclude particular members, or, as facts develop, “may decertify, subclassify, or modify a previously certified class action.”  

C

[¶21] Petro-Hunt challenges the trial court’s determinations on factors F, G, H, and K. 

[¶22] In addressing factor F, the trial court said:

Defendants contend that the long and substantial history of prior litigation demonstrates that individual lawsuits can and do provide practical and efficient means of adjudication.  Because of the number of royalty owners plaintiffs argue a class action is a more practical or efficient means of adjudicating claims.  Plaintiffs point out that without a class action repeated suits by the wealthier faction of Little Knife interest owners will continue and those who are not as wealthy or own lesser interests will not be represented.

The Court finds that other means of adjudication are inefficient and impractical.  The litany of litigation and number of individual suits supports plaintiffs’ argument that a class action will be more fair and efficient and hopefully finally resolve the issues.  This factor favors certification.

Petro-Hunt asserts, “it is clear well over 100 separate royalty/mineral owners have, at one time or another, commenced a lawsuit against either the Trust, Petro-Hunt, or one of their predecessors, claiming that the deduction of some or all costs incurred in processing gas at the Little Knife gas plant before computing royalties was inappropriate.”  Petro-Hunt argues, “[t]hese facts undeniably demonstrate that individual actions have been practicable and efficient—they have allowed individual mineral owners to assert the claims they chose to assert using the counsel they chose to use,” and contends, “the trial court abused its discretion in simply ignoring the clear and undeniable impact of the prior litigation history on this class action.”  The trial court’s decision may provide a day in court for some whose claims would be uneconomical to litigate individually, 
see
 
Phillips Petroleum Co. v. Shutts
, 472 U.S. 797, 809 (1985), and promote judicial economy, 
see
 1 Alba Conte and Herbert Newberg, 
Newberg on Class Actions
 § 1:1 (4th ed. 2002).  While Petro-Hunt and the trial court both posited plausible views of the effects of prior litigation on this litigation, we are unable to conclude that the trial court abused its discretion in adopting its view rather than Petro-Hunt’s on factor F.

[¶23] In addressing factor G, the trial court said:

Plaintiffs have shown that common issues of fact and law predominate.  The Court has rejected defendants’ argument that the history of prior individual suits demonstrates that individual actions are more appropriate.  This factor favors class certification.

In addressing factor H, the trial court said:

It appears that there is no other litigation pending in North Dakota regarding the issues raised in this lawsuit.  The fact that there are no other lawsuits and no one else has sought to intervene is not determinative as to the feasibility of a class action lawsuit and does not weigh against class certification.  
Saba v. Counties of Barnes
, 307 N.W.2d 590, 594 (ND 1981) citing 
Rogelstad
, 226 N.W.2d 370, 371 (ND 1995).  The Court has no information to suggest non-

representative parties have an interest in controlling new or pending separate actions.  This factor weighs in favor of certification.

In addressing factor K, the trial court said:

If management problems are only speculative and not evidenced in problems already experienced in the litigation, the class should be certified. 7A Wright & Miller §1780.  No management problems have yet been experienced, but defendants point out because of prior litigation and different individual lease types management problems may arise.  Plaintiffs point out that if the predominance factor is satisfied this factor is also satisfied.  
Ritter I
, 
supra
 
at ¶ 28.  The court determines that management of the class poses no unusual difficulties, at least at this point, and this factor does not weigh against certification.

Petro-Hunt has not presented persuasive reasoning showing the trial court abused its discretion in considering and weighing factors G, H, and K.  “‘An abuse of discretion by the trial court is never assumed; the burden is on the party seeking relief to affirmatively establish it.’” 
Jundt v. Jurassic Res. Devel. North America, L.L.C.
, 2003 ND 9, ¶ 10, 656 N.W.2d 15 (quoting 
Gepner v. Fujicolor Processing, Inc.
, 2001 ND 207, ¶ 13, 637 N.W.2d 681).

V 

[¶24] Petro-Hunt contends the class members will not be adequately represented by a proposed class counsel, whom Petro-Hunt asserts has a conflict of interest because he is a class member, his parents are proposed class representatives, and his ex-wife and members of her family are also proposed class representatives.

[¶25] The trial court certified the action as a class action, although it did find a potential conflict of interest:

The fact that Mr. Kaiser is a class member and a class attorney does create a potential conflict of interest but this Court is not convinced, at least at this point, that Mr. Kaiser’s disqualification is required.  The plaintiffs persuasively point out that the North Dakota rule affords more protection than the federal rule.  No compromise dismissal can be made by plaintiffs’ counsel without court approval.  Rule 23(l) N.D.R.Civ.P.  Attorney’s fees are subject to the control of the court.  Rule 23(p) N.D.R.Civ.P.  Even if it should develop that Mr. Kaiser has a conflict sufficient to warrant his removal, Mr. McLean and his firm would be available and appear to be able to adequately represent the class.

Petro-Hunt asserts the trial court did not address three federal court decisions (
Bachman v. Pertschuk
, 437 F. Supp. 973 (D. D.C. 1977), 
Fechter v. HMW Indus.
, 117 F.R.D. 362 (E.D. Pa. 1987), and 
Lyon v. Arizona
, 80 F.R.D. 665 (D. Ariz. 1978)), “but relied solely on the differences between the Federal rule and North Dakota rule . . . .  Such is a misapplication of the law and an abuse of discretion.”  

[¶26] In 
Bachman
, 437 F. Supp. at 978, the court held:

This Court holds that an attorney for a plaintiff class . . . who is himself a member of the class, has a conflict of interest such that his continued representation of the class as its attorney will not adequately protect the interests of absent class members.  Accordingly, the Court will modify the class certification to allow this litigation to proceed as a class action without the assistance of Mr. Ramadhan as attorney for the class.

The court in 
Fechter
, 117 F.R.D. at 364-65, held that representation of a class by the law firm of an attorney who was a de facto class representative presented an appearance of impropriety, and denied class certification.  In 
Lyon
, 80 F.R.D. at 668-

69, the court held that conflicts of interest arising from the fact that a class member was the wife of proposed class counsel required dismissal of the class allegations.  On the other hand, the court in 
Phillips v. Joint Legislative Comm.
, 637 F.2d 1014, 1023-24 (5th Cir. 1981), said a local court rule providing that an attorney who is the partner or spouse of a named class representative is disqualified from acting as class counsel does not apply when attorney fees will come directly from defendants, and not from a fund created for class relief, and the court in 
Umbriac v. American Snacks, Inc.
, 388 F. Supp. 265, 275 (E.D. Pa. 1975), said safeguards in Fed.R.Civ.P. 23 provide adequate protection of class interests.  Thus, 
“[c]ourts have disagreed on the propriety of an attorney who is a plaintiff in a class action who also seeks to serve as attorney for the class.”  1 Alba Conte and Herbert Newberg, 
Newberg on Class Actions
 § 3:40, p. 522 (4th ed. 2002).

[¶27] While the potential for a conflict of interest and a possible appearance of impropriety are troubling, we are not persuaded Petro-Hunt has met its burden of establishing the trial court abused its discretion.  The trial court’s determination is subject to reconsideration, and we are confident the trial court will monitor the situation and take any appropriate action that might become necessary to assure that the interests of the class or subclasses are adequately protected.

VI

[¶28] The trial court’s order certifying the case as a class action is affirmed.

[¶29] Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.