2015 ND 57

Darilyn BAKER, individually, and on behalf of all other persons similarly situated, Plaintiff and Appellant

v.

AUTOS, INC., a North Dakota Corporation, d/b/a Global Auto; RW Enterprises, Inc., a North Dakota Corporation; Robert Opperude, an individual; Randy Westby, an individual; and James Hendershot, an individual, Defendants and Appellees.

No. 20140033.

Supreme Court of North Dakota.

March 24, 2015.

Larry M. Baer (argued), West Des Moines, IA, and Robert G. Ackre (appeared), Cando, ND, for plaintiff and appellant.

Kraig A. Wilson, Grand Forks, ND, for defendants and appellees Autos, Inc., d/b/a Global Auto, Robert Opperude and James Hendershot.

Erich M. Grant (argued) and Bryan L. Van Grinsven (on brief), Minot, ND, for defendants and appellees RW Enterprises, Inc. and Randy Westby.

KAPSNER, Justice.

[¶ 1]   Darilyn Baker ("Baker") appeals from a district court order denying her motion for class action certification under N.D.R.Civ.P. 23.   Because we conclude the district court erred in applying the law to the thirteen sub-factors of the fair and efficient adjudication factor, we reverse the district court's order denying certifica-

tion and remand with instructions to reconsider the sub-factors in light of our holding.

## I

[¶ 2]   In 2007, Baker purchased a 2003 Pontiac Grand Am automobile from Autos, Inc., d.b.a. Global Auto. Baker financed the purchase of the Grand Am by trading in her old vehicle and by entering into a retail installment sales contract with Global Auto. The total balance of the Grand Am, after the credit Baker received for her vehicle trade-in, was $5,470.94. The total included a "document administration fee" of $195 and a "loan fee" of $200. Baker agreed to repay the loan in thirty monthly payments of $247.08. The retail installment contract also provided that if the payment was late, Baker would be charged $25.

[¶ 3]   Baker was late on making some of her required monthly payments, and the vehicle was repossessed. Before Baker defaulted on her loan, Global Auto assigned Baker's contract to RW Enterprises. After the vehicle was repossessed, Baker filed suit in state district court alleging Global Auto and RW Enterprises' sales and lending practices violated state usury law, among other claims. Baker also sued Robert Opperude and James Hendershot, the principal owners of Global Auto, and Randy Westby, the principal owner of RW Enterprises.

[¶ 4]   The defendants removed the case to the U.S. District Court for the District of North Dakota based on federal question jurisdiction. In federal court, Baker filed a motion seeking certification of a class action. While the motion was pending, Baker amended her complaint, effectively eliminating her claims under federal law. Thereafter, the federal district court determined only state law issues remained, and remanded the case back to state court without ruling on the motion to certify a class.

[¶ 5]   Back in state district court, Baker filed a motion to have the suit certified as a class action for all putative purchasers who, subject to the applicable statute of limitations period, may have suffered an injury as a result of Global Auto and RW Enterprises' business practices. Baker alleged the "loan fee," the "document administration fee," and the late payment charge violated North Dakota usury law and the North Dakota Retail Installment Sales Act. Baker argued the defendants' alleged violations of state usury law and the Retail Installment Sales Act were universal and affected approximately five hundred retail installment sales contracts. A hearing was held on the motion for class certification. Following the hearing, the district court entered an order denying the motion for class certification. The court did not rule on the merits of the case.

## II

[¶ 6]   "An order certifying or refusing to certify an action as a class action is appealable." N.D.R.Civ.P. 23(d)(3). This Court has previously summarized the appropriate standard of review of orders certifying or denying class status:

> The trial court has broad discretion in determining whether to certify a class action under N.D.R.Civ.P. 23. The trial court's decision to certify a class action will not be overturned on appeal unless the court has abused its discretion. A trial court abuses its discretion only when it acts in an unreasonable, arbitrary, or unconscionable manner, when its decision is not the product of a rational mental process leading to a reasoned decision, or when it misinterprets or misapplies the law.

*Howe v. Microsoft Corp.*, 2003 ND 12, ¶ 6, 656 N.W.2d 285.

[¶ 7] "Rule 23, N.D.R.Civ.P., is a remedial rule for efficient resolution of the claims or liabilities of many individuals in a single action, eliminating repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief...." *Bice v. Petro–Hunt, L.L.C.,* 2004 ND 113, ¶ 7, 681 N.W.2d 74. The rule furnishes "an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits." *Id.*

[¶ 8] Rule 23, N.D.R.Civ.P., provides that a trial court may permit class certification if the four following requirements are satisfied:

1. The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable;

2. There is a question of law or fact common to the class;

3. A class action should be permitted for the fair and efficient adjudication of the controversy; and

4. The representative parties fairly and adequately will protect the interests of the class.

*Howe,* 2003 ND 12, ¶ 8, 656 N.W.2d 285; N.D.R.Civ.P. 23(a) and (b). The four factors are often simply referred to as numerosity, commonality, fair and efficient adjudication, and adequate representation. *See, e.g., Werlinger v. Champion Healthcare Corp.,* 1999 ND 173, 598 N.W.2d 820.

[¶ 9] "If the court finds the first two requirements have been met, it must decide whether a class action should be permitted for a fair and efficient adjudication of the controversy, and in doing so N.D.R.Civ.P. 23(c) lists thirteen factors for the court to consider." *Mann v. N.D. Tax Comm'r,* 2007 ND 119, ¶ 33, 736 N.W.2d 464. "The trial court must weigh the competing factors, and no one factor predominates over the others." *Rose v. United Equitable Ins. Co.,* 2002 ND 148, ¶ 9, 651 N.W.2d 683. We have previously elaborated:

In most cases some of the thirteen factors will weigh against certification and some will weigh in favor. It is for the trial court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. Thus, even if [some] of the factors weigh against certification, that does not preclude the court from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification.

*Id.* Weighing the various factors is separate and independent from the ultimate inquiry whether a class can prove its claim. *See Werlinger,* 1999 ND 173, ¶ 18, 598 N.W.2d 820. "It is well settled that a district court must make a determination of class certification without delving into the merits of the case. The question is whether the requirements to certify a class action have been met, not whether the plaintiffs will prevail on the merits." *Id.* (citation omitted).

[¶ 10] This Court has previously addressed class certification where the underlying cause of action is usury. In *Rogelstad v. Farmers Union Grain Terminal Ass'n Inc.,* 226 N.W.2d 370, 376 (N.D. 1975), this Court held that the district court abused its discretion in denying certification to a group of farmers who were allegedly charged usurious interest rates by a grain elevator association. The district court determined common questions of law or fact did not exist, as there were some putative class members with implied agreements, some with promissory notes, and others with "some other type [of agreement]." *Id.* at 373. The district

court also reasoned, "If existence of usury is dependent upon promissory note or other written agreement, then interpretation of those express contracts becomes all important to the resolution of the case." *Id.*

[¶ 11] On appeal, this Court reversed the district court's order denying certification and remanded with instructions that the class be certified. *Rogelstad*, 226 N.W.2d at 378–79. This Court held commonality existed because there were common questions of fact: all the plaintiffs could "offer the same evidence as to the interest rate charged, the computer bookkeeping methods of GTA [grain elevator association], the relationship between GTA headquarters and local elevators, and billing methods, among other things." *Id.* at 378. We also noted the case presented a common legal question: " 'Did GTA, for "numerous" patrons with grain purchase contracts, utilize an accounting procedure for billing interest on advances that entailed a usurious rate of interest, resulting in a charge or collection of usury?' " *Id.* Finally, once the evidence was presented as to the common questions of fact, and a disposition was made as to the question of law, we concluded that "either GTA would be entitled to a decision in its favor or the class action plaintiffs would need only to prove their individual damages." *Id.*

[¶ 12] There are several similarities between the instant case and *Rogelstad.* Most significantly, both cases involve the underlying claim of usury, and whether miscellaneous contracts and terms provide sufficient common questions of law or fact. Although the *Rogelstad* Court was applying a class action rule that has since been amended, the substance of the rule has not changed to such an extent that *Rogelstad* is no longer good law. *See Saba v. Counties of Barnes, Benson, Burleigh, Eddy, Foster, Griggs, Kidder, Nelson, & Wells,* 307 N.W.2d 590, 593 (N.D.1981). *Rogel-*

*stad* remains good law and provides guidance here.

## III

[¶ 13] On appeal, Baker argues the district court abused its discretion in applying the thirteen factors under N.D.R.Civ.P. 23(c)(1)(A)–(M). Baker contends the court misapplied the law by only permitting certification in instances when damages are uniform. Baker also argues *Rogelstad* is controlling, and that commonality can still be met where each member of the class has his or her own unique damages.

[¶ 14] The district court's certification order did not address numerosity or commonality, nor did the defendants' briefs filed in this Court or in the district court. We were not provided with a transcript from the certification hearing, so we must presume that oral arguments followed the briefing and that claims of numerosity and commonality were not challenged. *See Sabot v. Fargo Women's Health Org., Inc.,* 500 N.W.2d 889, 892 (N.D.1993) ("The appellant assumes the consequences and the risk for the failure to file a complete transcript.") (citation omitted). The fact that numerosity was not challenged is not surprising because the plaintiff alleges more than 500 putative class members exist. *See Horst v. Guy,* 211 N.W.2d 723, 726–27 (N.D.1973) (forty-eight identifiable class members established numerosity). Neither is it surprising commonality was not challenged given this Court's application of the factor as one easily met. *See Klagues v. Maint. Eng'g,* 2002 ND 59, ¶ 23, 643 N.W.2d 45 ("[B]ecause only one question of law or fact is required to establish commonality, courts have classified it as easily satisfied under the rule."). Defendants and appellants challenge the fair and efficient adjudication factor and whether Baker is an adequate class representative.

[¶ 15] Although the commonality factor was not challenged, we find it necessary to discuss it because the overarching theme throughout the district court's order denying certification focused on the apparent discrepancies in the vehicle contracts. The district court reasoned that because the various vehicle purchasers were charged miscellaneous fees, interest rates, costs, etc., each contract required individualized review to determine whether a violation of law occurred and if so, the proper remedy. In its analysis of one of the thirteen sub-factors of the fair and efficient adjudication factor, the district court stated:

> As the Court understands Baker's argument, all, or nearly all potential class members were charged usurious interest. However, not all were charged the same usurious rates. All, or nearly all potential class members were charged excessive fees. However, not all were charged the same excessive fees. All, or nearly all potential class members were the victims of incomplete or inaccurate loan disclosures. However, not all were victims of the same incomplete or inaccurate disclosures.

[¶ 16] Here, the issue is whether the district court abused its discretion in denying certification based on the asserted contractual differences. The court's reasoning indicates there needed to be uniformity in the interest rates and fees, or at least more consistency in the contracts for certification to be proper. Although the court focused its analysis on the fair and efficient adjudication factor and its thirteen sub-factors in N.D.R.Civ.P. 23(c)(1)(A)–(M), the substance of the court's reasoning under each sub-factor primarily focused on the inadequacy of common questions of fact. Because individual differences in treatment or potential damages with respect to the various vehicle contracts does not defeat commonality, we conclude the district court erred in applying the law to the thirteen sub-factors of the fair and efficient adjudication factor.

[¶ 17] An analysis of the commonality factor, as well as an analysis of the thirteen sub-factors of the fair and efficient adjudication factor, is necessary to further explain our holding.

### Commonality

[¶ 18] "The commonality requirement has been characterized as a low hurdle that is easily surmounted." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 13:16 (4th ed.2002). "[B]ecause only one question of law or fact is required to establish commonality, courts have classified it as easily satisfied under the rule." *Bice*, 2004 ND 113, ¶ 9, 681 N.W.2d 74. "Commonality is satisfied if there is a common nucleus of operative facts or there are legal issues common to a class, or when a question of law linking class members is substantially related to the resolution of the litigation, even though the individuals are not identically situated." Conte & Newberg, *supra* at § 13:16 (4th ed.); *see also Werlinger*, 1999 ND 173, ¶ 16, 598 N.W.2d 820 ("When a question of law refers to standardized conduct by the defendants toward members of a proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement is met."). "When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." 1 William B. Rubenstein, *Newberg on Class Actions* § 3:20 (5th ed.2011).

[¶ 19] Courts have generally held that not every issue of law or fact needs to be identical for there to be commonality. *See Bice*, 2004 ND 113, ¶ 9, 681 N.W.2d 74

("Individual differences in cases concerning treatment or damages do not defeat commonality."); *Paxton v. Union Nat'l. Bank,* 688 F.2d 552, 561 (8th Cir.1982) (commonality does not require that every question of law or fact be common to every member of the class; commonality may be satisfied where the question of law linking the class is substantially related to the resolution of the litigation even though the individuals are not identically situated). "Because not *all* questions need be common, the fact that class members must individually demonstrate their right to recover, or that they may suffer varying degrees of injury, will not bar a finding of commonality." 1 Rubenstein, *supra,* § 3:20 (5th ed.) (emphasis in original). Thus, even where there is disparity in each class member's damages, that does not necessarily defeat commonality.

[¶ 20] The issue of commonality in vehicle retail installment contract cases has appeared with some frequency in federal Truth in Lending Act ("TILA") cases. Although Baker does not raise TILA in her claim, her issues are comparable to such cases. Common questions of law or fact arising under TILA have included:

(1) whether forms used in connection with consumer credit purchases did not make the required disclosures;

(2) whether monthly billing statements failed to disclose the annual percentage rate of finance charges;

(3) whether particular disclosures are in fact required; and

(4) what are the effects of certain standardized conduct of the defendant.

Conte & Newberg, *supra,* § 21:3 (4th ed.). One commentator has noted, "[w]hen the [TILA] complaint alleges that there has been an inadequate disclosure of some required information or some other defect in the procedures or forms utilized, common questions of law and fact are found in the standardized conduct of the defendant in allegedly failing to meet those statutory requirements." 7A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1763 (3d ed.2014).

[¶ 21] In *Chandler v. Sw. Jeep–Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D.Ill.1995), commonality was satisfied where class members entered into standard service contracts with an auto dealer. The court noted, even though potential individual issues such as reliance and damages remained, commonality was satisfied because all the claims involved the common question whether the disclosure provisions of the contracts violated TILA or a state consumer fraud act. *Id.; see also Heartland Communications, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 116 (D.Kan.1995) (granting class certification and finding commonality in breach of contract action where the contracts signed by all proposed class members, while not identical, contained virtually the same provision as the contract challenged by the class representative); *In re United Energy Corp. Solar Power Modules Tax Shelter Invs.,* 122 F.R.D. 251, 254 (C.D.Cal.1988) (finding that, where the allegations concerned common issues of conduct, standardized documents and misrepresentations, the remaining individual issues of reliance, causation and damages did not exclude certification).

[¶ 22] Similarly, in *Violette v. P.A. Days, Inc.,* 214 F.R.D. 207, 214 (S.D.Ohio 2003), certification was granted where used car buyers brought TILA and state retail installment sales act ("RISA") actions against auto dealers who allegedly engaged in unfair trade practices. The court found commonality was satisfied where common questions of fact included the nature of the forms used by the auto dealer and whether the dealer failed to accurately disclose the annual percentage rate. The court also found there were

common questions of law, including the legality of dealer's "Retail Installment Sales Contract and Security Agreement form, whether various fees imposed are permitted by the Ohio Retail Installment Sales Act, whether [the dealer's] disclosures are in violation of the federal Truth In Lending Act, and whether Theft–Gard must be disclosed as part of the finance charge disclosure." *Id.* at 213–14.

[¶ 23] In *Salvagne v. Fairfield Ford, Inc.,* 264 F.R.D. 321, 327 (S.D.Ohio 2009), a class was certified for a group of car buyers that challenged a Ford dealer's financing procedures and retail installment sales contracts. The common issues of law and fact included:

> the nature of the forms used by Ford; whether those forms are permissible under the laws implicated herein [TILA, Ohio's Consumer Sales Practices Act, and the Equal Opportunity Credit Act], including whether a retail installment sales contract may permissibly be modified by a separate agreement; whether Ford is a creditor under the laws implicated herein; whether Ford failed to make meaningful TILA disclosures; and whether Ford failed to give notice of an adverse credit action.

*Id.* Although the dealership argued commonality was not met because the various vehicle contracts contained materially different language, the court stated "such factual differences among the class members would not defeat the common issues of law that are present." *Id.; but cf. Health Cost Controls v. Sevilla,* 365 Ill. App.3d 795, 303 Ill.Dec. 46, 850 N.E.2d 851, 863 (2006) (stating "where an entity's relationships with other members of a putative class are established by the presence of several individual contracts, any significant differences in the operative language of those contracts militates against a finding of commonality for purposes of class certification"). We are also aware that in a similar case with many of the same potential class members, U.S. District Court Judge Hovland, applying federal law, denied certification, concluding the lead plaintiff did not show there were questions of law or fact common to the class. *Delorme v. Autos, Inc.,* 4:11–CV–039, 2012 WL 1606636, at \*5 (D.N.D. May 8, 2012).

[¶ 24] Here, although Baker's putative class of vehicle purchasers includes numerous contracts containing various prices and conditions, the overarching and unifying attribute common to each Global Auto contract concerns the "loan fee," the "document administration fee," the "late fee," and whether the amount or nature of each fee violates state usury law or RISA. Each putative plaintiff signed the same standard form contract, albeit with varying price terms written in for each respective vehicle. The district court noted the potential class members were not all charged the same usurious rates or excessive fees or subject to varying inaccurate or incomplete disclosures. However, these variations speak more to the issue of damages, and it is well established that differences in the degree of injury or damages will not bar a finding of commonality. *See* 1 Rubenstein, *supra,* § 3:20 (5th ed.); *Morgan v. Coats,* 33 So.3d 59, 65 (Fla.Dist.Ct.App.2010) ("While it is true that there will be some factual variations among the class members' claims ... such issues go to the determination of damages rather than to liability. And individualized damages inquiries do not preclude class certification.").

[¶ 25] Given the common characteristics in the "loan fee," the "document administration fee," the "late fee," and whether the amount or nature of each fee violates state usury law or RISA, we conclude there is a common nucleus of opera-

tive facts and legal issues common to Baker and her putative class. Generally, commonality is not difficult to overcome, nor is it automatically defeated when individual differences in damages may occur. *See Bice,* 2004 ND 113, ¶ 9, 681 N.W.2d 74. This case presents several common questions of both law and fact, for instance:

1. Were the buyers charged a $25 late fee?

2. Does RISA prohibit a $25 late fee?

3. Were the plaintiffs charged a loan fee?

4. Does the loan fee violate RISA or state usury law?

5. Were the plaintiffs charged a document administration fee?

6. Does the document administration fee violate RISA or state usury law?

7. Were the plaintiffs aware of document administration fees or loan fees?

8. Does RISA require disclosure of document administration and loan fees?

There is some evidence that indicates not all the purchasers were charged a "document administration fee," a "loan fee," or subject to a "late fee." This fact alone does not defeat commonality. For instance, if one group of purchasers was only charged a "late fee" and another only charged a "loan fee," it may be appropriate to have separate sub-classes. Those purchasers who cannot demonstrate they were subject to the fees would not qualify for the sub-class. Because the claims all involve similar allegations concerning the legality of Global Auto's "document administration fees," "loan fees," and "late fees," there is commonality in this case.

[¶ 26] There is also some indication the district court operated under the erroneous view that commonality requires both common questions of law *and* fact. The court, apparently referring to com-

monality, stated, "[w]hile there may indeed be common questions of law regarding usury and compliance with the retail installment sales act, common questions of fact are missing. Each individual contract will need to be reviewed to determine whether any violations of law occurred, and what an appropriate remedy would be." This is an incorrect interpretation of the law. Only one question of law or fact is required to establish commonality. *Bice,* 2004 ND 113, ¶ 9, 681 N.W.2d 74. While either a single question of law or fact is sufficient, this case presents several questions of both law and fact that are common to the proposed class.

[¶ 27] In *Rogelstad,* we determined the common fact issues included the interest rate charged and the defendant's bookkeeping and billing methods. 226 N.W.2d at 378. Individual issues did not defeat commonality in *Rogelstad:*

the only possible differences between the contentions of the named plaintiff and the potential plaintiffs would arise from the fact that some potential plaintiffs may have signed notes for their advances while the named plaintiff and other potential plaintiffs did not, the individual differences as to dates of advances and repayments, and amounts of damages. The similarities, which will very likely be determinative of the right of the class plaintiffs to recover, are largely legal questions: whether the usury law applied to the factual situation we have outlined, whether an agreement is necessary in order to constitute usury, or whether the mere charging and receipt of usurious interest is sufficient. We believe that these issues predominate over any questions affecting only individual members....

*Id.* at 376 (internal quotation marks omitted). Analogously here, the proposed class, according to Baker, were all charged

usurious loan fees, were subject to unlawful late fee provisions, and endured incomplete or inaccurate disclosures. *Rogelstad* and the instant case also reflect the same basic legal question: whether the defendant charged usurious interest rates. Indeed, the district court in this case even noted the proposed class presented a common legal question: "The questions of law applicable to all class members may indeed be identical: was usurious interest charged, did violations of the retail installment sales act occur? The questions of fact, however, vary for each individual proposed class member." Finally, as in *Rogelstad*, once the evidence is presented as to the common questions of fact, and the court applies the law, either Global Auto would be entitled to a decision in its favor or the class action plaintiffs would need to prove their individual damages.

### Fair and Efficient Adjudication

[¶ 28] If the district court finds the first two requirements of certification, numerosity and commonality, have been met, "it must decide whether a class action should be permitted for a fair and efficient adjudication of the controversy, and in doing so N.D.R.Civ.P. 23(c) lists thirteen factors for the court to consider." *Mann*, 2007 ND 119, ¶ 33, 736 N.W.2d 464.

#### A. Whether a Joint or Common Interest Exists Among Class Members

[¶ 29] "Generally, a common interest exists if one class member's failure to collect would increase the recovery of the remaining members, or if the defendant's total liability does not depend on how the recovery of the claim is distributed among the class members." *Klagues*, 2002 ND 59, ¶ 11, 643 N.W.2d 45. "A joint and common interest under N.D.R.Civ.P. 23(c)(1)(A) is not the same as a common question of law or fact under N.D.R.Civ.P. 23(c)(1)(E)." *Id.* Nor is a joint and common interest under N.D.R.Civ.P. 23(c)(1)(A) satisfied by a mere showing a common interest in recovery or a common nucleus of facts. *Id.* at ¶ 12. In *Klagues*, we determined the trial court erred in finding a joint and common interest existed under N.D.R.Civ.P. 23(c)(1)(A) because there was no indication in the record that the failure of one potential class member to collect from the defendant would increase the other class members' recovery. *Id.* On the contrary, in *Klagues*, each potential class member had an individualized amount they claimed was owed to them, based on the defendant's alleged breach of contract. *Id.*

[¶ 30] Here, the district court found no common or joint interest among the purported class members existed, explaining:

> The failure of one or more class member to collect will not increase Baker's recovery, or the recovery of any other class member. Further, the total liability of the defendants will depend upon the individual recovery of each class member, and the distribution of the recovery among class members will be individualized according to the specific facts of each transaction.

Recovery in this case, like the proposed class in *Klagues*, would be determined by each individual's claim, rather than sharing recovery from a fixed pool of money. Therefore, the district court correctly applied the law and made findings within its range of discretion. The district court did not abuse its discretion deciding that no common or joint interest existed between class members and that this factor did not favor certification.

#### B. The Risk of Inconsistent Adjudications

[¶ 31] Rule 23(c)(1)(B), N.D.R.Civ.P., requires consideration of:

whether prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for a party opposing the class.

The risk of inconsistent adjudications is not that some might win their case while others lose theirs, nor does the possibility of different monetary judgment among potential class members pose a risk of varying adjudications or incompatible standards. *See Klagues*, 2002 ND 59, ¶ 14, 643 N.W.2d 45. Rather, the inconsistent and varying adjudications sub-factor (B), "only applies to actions in which the non-class party could be sued for different and incompatible affirmative relief, as opposed to actions seeking money damages." *Id.* at ¶ 13. Incompatible standards under N.D.R.Civ.P. 23(c)(1)(B) generally "occur when the party opposing the class certification would be unable to comply with one judgment without violating the terms of another judgment." *Klagues*, at ¶ 13.

[¶ 32] The district court found this factor did not favor certification because individual recovery depends on the merits of each individual's claim. It found that because the standards to which the defendants must be held are established by statute and do not vary from plaintiff to plaintiff, no danger of inconsistent or varying adjudications exists.

[¶ 33] We find the district court misapplied the law because it did not analyze this sub-factor in the context of whether the defendants would be unable to comply with one judgment without violating the terms of another judgment if separate actions were brought by individual class members. *See Klagues*, 2002 ND 59, ¶ 13, 643 N.W.2d 45.

## C. Whether an Individual Adjudication Would be Dispositive of Others' Claims or Interests

[¶ 34] The next fair and efficient adjudication sub-factor to consider is whether the resolution of one person's lawsuit likely would be dispositive of the interests of others, or whether it would substantially impair other parties' ability to protect their interests. N.D.R.Civ.P. 23(c)(1)(c). "The precedential effect of a decision in individualized litigation 'alone should not be the basis for class certification under' N.D.R.Civ.P. 23(c)(1)(c), 'but precedent plus some other practical factor could be sufficient to qualify as a class under this factor.'" *Bice*, 2004 ND 113, ¶ 16, 681 N.W.2d 74 (citation and quotation omitted). This Court has stated:

Although most class certification issues under this factor deal with cases involving limited funds, the plain language of the rule does not restrict it to those cases. *Koch I*, [*Ritter, Laber and Assoc. v. Koch Oil*, 2000 ND 15, ¶ 18, 605 N.W.2d 153]. The trial court did not base its finding under this factor on [the defendant's] lack of funds, but instead found individual actions could have a preclusive effect on recovering or defending claims. We noted in *Koch I*, the majority of courts have required that the effect of separate actions must be more than stare decisis. *See id.; see also* 5 *Moore's Federal Practice* § 23.42[3][b] (noting the stare decisis effect is insufficient to warrant class certification under this factor). The intent of Rule 23 is not to create a right to a class action simply because an opinion in one action might be cited as precedent in another action. Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 4.10 (3d ed.1992) (citing *Goldman Theatres, Inc. v. Paramount Film Corp.*, 49 F.R.D. 35 (E.D.Pa.1969)). If this were considered the rule, then al-

most every action would be susceptible of being brought as a class action. *Klagues*, 2002 ND 59, ¶ 17, 643 N.W.2d 45.

[¶ 35] Plaintiff argued to the district court and on appeal that class treatment would provide a simple and streamlined means of determining the legal questions, leaving only calculations of damages. That argument is relevant to determining whether common questions predominate, but it is not the correct analysis under sub-factor (C). Further, we have not been pointed to anything in the record suggesting this is a limited funds case or that individual adjudications risk anything other than the potential for differing adjudicatory results. Therefore, the district court did not abuse its discretion by finding that there is no risk individual adjudications would dispose of others' claims, and that this sub-factor does not favor certification.

D. *Whether Defendants Have Acted on Grounds that Apply Generally to the Class, so that Final Injunctive Relief or Corresponding Declaratory Relief is Appropriate*

[¶ 36] The threshold requirement under this fair and efficient adjudication sub-factor is that the plaintiff seeks injunctive or declaratory relief. *See* N.D.R.Civ.P. 23(c)(1)(D). Baker argues she requested that the court "[e]nter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effect of the unlawful and deceptive conduct described herein and to prevent similar occurrences in the future." The district court explained that the defendants removed this action to federal court, where Baker amended her complaint to dismiss the North Dakota Unfair Trade Practices claim, the federal truth in lending claim, and the North Dakota Racketeer Influenced and Corrupt Organizations ("RICO") claim. Those same amendments removed the prayer for injunctive relief

quoted by Baker to this Court. The body of Baker's amended complaint, states, "This is a civil action for declaratory relief, injunctive relief, and monetary damages relating to Defendants' usurious unlawful consumer lending practices." The prayer for relief in plaintiff's amended complaint asks the court to "[e]nter its finding" that defendants have violated the usury law and RISA entitling plaintiff to statutory forms of relief and damages.

[¶ 37] "The prayer for relief does not constitute part of the complaint or petition or statement of the cause of action or of the right to the relief prayed for." *Trauger v. Helm Bros., Inc.*, 279 N.W.2d 406, 412 (N.D.1979). Even though the prayer for relief is not a part of the cause of action and would not control the relief in a contested case, the court may look to the prayer as a means of clarifying the parties' contentions and the issues raised. *Id.*

[¶ 38] The district court found this sub-factor did not favor class certification because an individualized consideration was needed on each retail installment contract to determine whether each contract violated the law. The court reasoned that the defendants are obligated to follow the law, and to the extent the defendants have violated the law, the individual who suffered harm may rely on statutory remedies to redress the violation. The court also stated it would not enjoin a party from breaking the law and "[a]n injunction or declaratory relief regarding usury offers little to the proposed class."

[¶ 39] We find the district court misapplied the law because it did not analyze this sub-factor in the context of whether Baker sought injunctive or declaratory relief.

### E. Whether Common Questions of Law or Fact Predominate over Individual Ones

[¶ 40] Sub-factor (E) of the fair and efficient adjudication factor requires that the district court weigh "whether common questions of law or fact predominate over any questions affecting only individual members." N.D.R.Civ.P. 23(c)(1)(E). This consideration examines whether the class's interests "are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Predominance is "far more demanding" than the commonality requirement. *Id.* at 623–24, 117 S.Ct. 2231. In *Koch I*, this Court said:

> There is no precise test to determine whether common questions predominate over individual claims. The individual claims need not be carbon copies of each other for common questions to predominate. 'Predominate' should not be automatically associated with 'determinative' or 'significant,' and consequently when one or more central issues to the action are common and can be said to predominate, the class action will be proper.

2000 ND 15, ¶ 22, 605 N.W.2d 153 (internal citations and quotations omitted). "[C]ommon issues need not be dispositive of the entire litigation, and class action status is not to be refused merely because individual fact issues will remain after the common issues are resolved." *Peterson v. Dougherty Dawkins, Inc.*, 1998 ND 159, ¶ 22, 583 N.W.2d 626. Iowa, like North Dakota, has adopted the Uniform Class Action Rule. Its court held common questions do not predominate when "[t]rial as a class action would involve only limited amounts of evidence, and perhaps no evidence, relevant to all class members," but "would involve large amounts of evidence relevant only to individual plaintiffs." *Quamme v. Advance Trading, Inc.*, No. 99–0874, 2001 WL 540056, at *5 (Iowa Ct.App. May 23, 2001).

[¶ 41] The *Newberg* treatise on class actions explained the predominance consideration under Federal Civil Rule 23 as follows:

> Issues are characterized as common or individual primarily based on the nature of the evidence:

> If "the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question."

> If "the same evidence will suffice for each member to make a prima facie showing," or if the issue is "susceptible to generalized, class-wide proof," then it is a common issue.

2 William B. Rubenstein, *Newberg on Class Actions* § 4.50 (5th ed.2012). The treatise also states, "The predominance demand is stricter than [the] commonality requirement—it is not just that common issues exist, the predominance inquiry determines the further question of whether these are more prevalent than non-common issues." *Id.* at § 4.51.

[¶ 42] Here, the district court found sub-factor (E) did not favor certification. Although the court found that questions of law were applicable to all class members, it determined "[t]he questions of fact ... vary for each individual proposed class member." The court also found, "Obviously, each sales price of each individual automobile was different in each transaction, making interest calculations and determinations of damages, if any, an individualized process for each transaction."

[¶ 43] We conclude the district court did not abuse its discretion in applying this sub-factor.

### F. Whether Other Means of Adjudicating the Claims are Impracticable or Inefficient

[¶ 44] The district court must also consider "whether other means of adjudicating the claims and defenses are impracticable or inefficient." N.D.R.Civ.P. 23(c)(1)(F). The district court determined sub-factor (F) did not favor certification, acknowledging that 500 or more separate actions for improper sales and lending practices may be impractical, but it is not incapable of being performed or accomplished. The district court stated, "It is not readily apparent that the Court can accomplish a complete resolution of all class claims without an independent analysis of all individual contracts." The district court also noted, "If the recovery of each individual class member must depend upon an examination of every single contract to determine first whether any violations of law occurred, and second, what are the damages, if any, or what other relief is available to the individual claimant, a class certification accomplishes nothing."

[¶ 45] A primary purpose of class action suits, particularly money damages claims, is to enable litigation of claims that are worth too little money to be pursued individually. 2 Rubenstein, *supra*, § 4:65 (5th ed.). "[W]hen many individuals have small damage claims, aggregation is especially appropriate because absent a class suit, it is unlikely that any of the claimants will be accorded relief." *Id.* at § 4:47. Thus, N.D.R.Civ.P. 23, provides an "effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits." *Bice*, 2004 ND 113, ¶ 7, 681 N.W.2d 74.

[¶ 46] We conclude the district court misanalyzed sub-factor (F) because it did not analyze it in the context of small damage claims.

### G. Whether a Class Action Offers the Most Appropriate Means of Adjudicating the Claims and Defenses

[¶ 47] This sub-factor looks at both claims and defenses to determine whether a representative class proceeding provides the most appropriate means of adjudication. N.D.R.Civ.P. 23(c)(1)(G). The district court found sub-factor (G) did not favor certification because the court must look at both the claims and the defenses. The district court earlier acknowledged that Baker presented a common legal claim but that any determination of facts would be particularly individualized. Under this sub-factor, the district court explained it could not issue a blanket finding that the defendants violated the usury law in all 500 contracts "either because the fluctuating formula required for determining usury removes a contract from the ambit of the usury law, or the defendants properly disclosed everything required by the retail installment sales act."

[¶ 48] The *Newberg* treatise notes that comparing class actions to alternate forms of litigation "is not a comparison that requires significant effort in most class action cases, namely those involving small claims." 2 Rubenstein, *supra*, § 4:87 (5th ed.). The treatise goes on to note:

> In such cases, there will either be a class action or there will be no litigation. A class action is not only superior to other forms of litigation; it is the only form of litigation.

*Id.*

[¶ 49] Defendants and appellees argue that sub-factor (G) requires a consideration of whether a class action offers the most appropriate means of adjudicating the claims, as well as the defenses. They argue that while a class action "would undoubtedly provide a convenient method for Baker to prosecute a class action claim, it

would also eviscerate the ability of the defendants to fairly defend themselves in court," and they "must be given the opportunity to compel each claimant to prove that they are actually entitled to relief."

[¶ 50] In *Salvagne,* a similar case, a class was certified for a group of car buyers that challenged a Ford dealer's financing procedures and retail installment sales contracts. 264 F.R.D. at 327. Ford argued a class action was not the most efficient method for adjudicating the issues because it would have to devote considerable time to investigate each individual deal, agreement, and customer interaction. *Id.* at 330. The court found Ford's position contradictory:

> Ford argues that differences in forms and customer understanding should defeat Plaintiffs' motion for class certification but in the same breath assures the Court that it would receive closure on the issues raised by Plaintiffs if the Court ruled on an individual claim. The Court fails to see how those two positions can be reconciled with each other.

*Id.*

[¶ 51] We conclude the district court misanalyzed sub-factor (G).

**H.  *Whether Members Not Representative Parties Have a Substantial Interest in Individually Controlling the Prosecution or Defense of Separate Actions***

[¶ 52] This sub-factor addresses whether non-representative class members have "a substantial interest" in controlling their own lawsuit instead of being bound by an adjudication controlled by others. *See* N.D.R.Civ.P. 23(c)(1)(H). The district court found this sub-factor neither favored nor disfavored class certification. Baker argues the court relied on speculation in not finding this fair and efficient adjudication consideration favored certification. The defendants claim Baker engages in speculation with her assertion that no pu-

tative class member has the resources to advance individual claims.

[¶ 53] The *Newberg* treatise quotes the Advisory Committee that drafted federal Rule 23, affirming its guidance regarding class members' individual interests:

> The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic rather than practical: the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable.

2 Rubenstein, *supra,* § 4:69 (5th ed.). The treatise goes on to state:

> The passage identifies two reasons why individuals may have little interest in pursuing litigation themselves: *first,* their claims may be so closely related to the claims of others that litigation by others will achieve their ends without the need for their involvement; *second,* their claims may be so small that it would be a waste of their time and/or resources to litigate individually. These situations support the conclusion that individuals have little interest in controlling their own litigation and hence that representative litigation is superior.

*Id.* Our caselaw has recognized this sub-factor as weighing in favor of certifying a class action when damages suffered by each putative class member are not large. *See Klagues,* 2002 ND 59, ¶ 21, 643 N.W.2d 45 (citing *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190 (9th Cir.2001)). Baker's complaint asserts a document origination fee of $195, a loan fee of $200, and late fees of $25 violate state law.

[¶ 54] Since neither party introduced evidence of this sub-factor, the district

court did not abuse its discretion in finding sub-factor (H) is neutral.

## I. Whether the Class Action Involves a Claim That is or has been the Subject of a Class Action

■ [¶ 55] This sub-factor probes whether the proposed class proceeding has been the subject of other certification attempts or independent litigation. N.D.R.Civ.P. 23(c)(1)(I). The district court found this consideration did not favor certification because the North Dakota federal district court denied certification of similar claims against the same defendants in *Delorme v. Autos, Inc.,* No. 4:11–CV–039, 2012 WL 1606636 (D.N.D. May 8, 2012). The district court paraphrased the federal court decision: "Judge Hovland writes that even a cursory review of the documents filed with the motion reveals that not all members of the class were charged the same fees or interest. The Court would therefore need to engage in an examination of each particular transaction to determine whether the defendants violated any law." Because of similarities between this case and the federal *Delorme* case, we cannot conclude the district court's consideration of the history of these legal issues was an abuse of discretion.

## J. Whether it is Desirable to Bring the Class Action in Another Forum

[¶ 56] The court must consider "whether it is desirable to bring the class action in another forum." N.D.R.Civ.P. 23(c)(1)(J). The district court determined that fair and efficient adjudication consideration sub-factor (J) favored granting class certification. Baker agrees the court properly found this sub-factor. The defendants do not challenge the court's finding, and further discussion is unnecessary.

## K. Whether Management of the Class Action Poses Unusual Difficulties

■ [¶ 57] The court must consider "whether management of the class action poses unusual difficulties." N.D.R.Civ.P. 23(c)(1)(K). Little has been written in North Dakota about this "manageability" sub-factor in the fair and efficient adjudication analysis. In *Old Broadway Corp. v. Hjelle,* this Court held the district court did not abuse its discretion in denying certification due to manageability concerns where the subject of litigation was often-changing highway billboard advertising. 411 N.W.2d 81, 86 (N.D.1987). However, the reasons underpinning that ruling were not explored.

[¶ 58] The federal class action rule is arranged differently than North Dakota's rule, but both rules contain a manageability prong. The federal rule's prong is a sub-consideration to whether class proceedings are "superior" to other methods of adjudication. Fed.R.Civ.P. 23(b)(3)(D). The *Newberg* treatise reports, "The manageability factor 'encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit.' " 2 Rubenstein, *supra,* § 4:72 (5th ed.). The treatise also states, "courts deny class certification on manageability grounds relatively infrequently and primarily in certain carefully circumscribed situations." *Id.* The treatise explains four reasons why manageability concerns might be grounds for infrequently denying certification:

*First,* the manageability inquiry is, importantly, part of the superiority inquiry. What that means is that the question that courts consider when they analyze manageability is not whether a class action is manageable in the abstract but how the problems that might occur in managing a class suit compare to the problems that would

occur in managing litigation without a class suit. In other words, the manageability inquiry is a comparative one. The Eleventh Circuit has stated that point this way:

> [W]e are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives.

....

*Second,* given the fact that the very concerns that might make a class suit difficult to manage also infect the procedural alternative, courts within at least seven circuits have held that there is a presumption against dismissing a class action on manageability grounds or that such dismissals are disfavored.

*Third,* because the cases most likely to be unmanageable are those involving myriad individual issues, the manageability concern often simply echoes the predominance analysis. Therefore, courts generally hold that if the predominance requirement is met, then the manageability requirement is met as well.

*Fourth,* although occasional early class action decisions suggested that a large size class made a case unmanageable, this contention gained little traction since a large class with small claims is the paradigm of a class action.

2 Rubenstein, *supra,* § 4:72 (5th ed.).

[¶ 59] Here, the district court found sub-factor (K) did not favor class certification. The court reasoned that every member of the alleged class has a different, individual claim, noting: "There is not one action which will control the outcome for the entire class, but potentially 500 or more 'mini-actions' to be managed."

[¶ 60] While serving as a judge on the Second Circuit, now United States Supreme Court Justice Sonia Sotomayor wrote that "failure to certify an action ... on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'" 2 Rubenstein, *supra,* § 4:80 (5th ed.). There are several court-initiated management techniques that may be employed that might enable a class action suit to proceed. *Id.* See, *e.g.,* N.D.R.Civ.P. 53(a)(1)(B)(ii).

[¶ 61] The district court misapplied this sub-factor. It failed to analyze whether a class action involving these plaintiffs involved management problems that the courts would not encounter in individual litigations involving the same plaintiffs without certification as a class.

*L. Whether Any Conflict of Laws Issues Involved Pose Unusual Difficulties*

[¶ 62] The district court must also consider "whether any conflict of laws issues involved pose unusual difficulties." N.D.R.Civ.P. 23(c)(1)(L). The district court determined that sub-factor (L) favored granting class certification. Baker agrees the court properly found this sub-factor. The defendants do not challenge the court's finding, and further discussion is unnecessary.

*M. Whether the Claims of Individual Class Members are Insufficient in the Amounts or Interests Involved, in View of the Complexities of the Issues and the Expenses of the Litigation, to Afford Significant Relief to the Class Members*

[¶ 63] The district court must consider "whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to class members." N.D.R.Civ.P. 23(c)(1)(M). The district court determined that fair and

efficient adjudication sub-factor (M) favored granting class certification. Baker agrees the court properly found this sub-factor. The defendants do not challenge the court's finding, and further discussion is unnecessary.

[¶ 64] We conclude the district court erred in applying the law to sub-factors (B), (D), (F), (G), and (K) of the fair and efficient adjudication factor.

### Adequacy of Class Representative

[¶ 65] One of the four requirements for certification is that the named plaintiff adequately represent the interests of the class. N.D.R.Civ.P. 23(b)(2)(C). The district court here found "Baker does not fairly and adequately represent the class" because "her contract, and her remedy, is hers alone," and "[t]he contracts, and any possible remedies available for the other 500 or so individual potential plaintiffs are theirs alone." Baker has not briefed this issue, so we have no challenge to a finding that one of the four requirements for certification is lacking. State v. Duchene, 2007 ND 31, ¶ 10, 727 N.W.2d 769 ("Issues not briefed by an appellant are deemed abandoned, and ... will not be considered on appeal."). However, because this matter is being remanded, this factor must be analyzed.

[¶ 66] This Court has addressed the adequacy of representation consideration three times: once in Bice, where an attorney representing the class also served as class counsel and was permitted to continue representing the certified class. 2004 ND 113, ¶¶ 26–27, 681 N.W.2d 74. The second was in Rose, where the defendants challenged the sole named plaintiff's claims as non-representative and knowledge of the claim as inadequate. 2002 ND 148, ¶ 22, 651 N.W.2d 683. The Court in Rose did not address all of the challenges but simply held, "Rose did not have any conflict of interest in representing the class,

and Rose had or could acquire adequate financial resources to maintain the class action." Id. The third was in Werlinger, 1999 ND 173, ¶ 23, 598 N.W.2d 820, where one of the named plaintiffs was married to class counsel, which this Court held was not a disqualifying relationship. The Court in Werlinger noted, "Concerns for adequacy of representation stem from the need to protect the due process rights of absent class members. Because of these constitutional underpinnings, adequacy of representation is of critical importance." Id. at ¶ 22 (citation omitted).

[¶ 67] Commentators have also written extensively on the need for an adequate class representative with one stating:

Like the typicality requirement, and in contrast to the requirements of numerosity and commonality, the adequacy requirement focuses on the desired attributes of those who seek to represent the class as opposed to the characteristics of the class. A class action is a form of representative litigation, with the representative's pursuit of the class's claims binding all of the class members to the outcome of that case regardless of their participation. To legitimate that binding effect, however, the Constitution's Due Process Clause and the rules of class action procedure both insist that the class be "adequately" represented. Adequate representation is therefore the capstone of the Rule 23(a) requirements: it ensures that the class's champion will pursue its interests sufficiently well so as to produce a judgment that can fairly bind all members of a group who cannot appear before the court individually.

1 Rubenstein, supra, § 3:50 (5th ed.).

[¶ 68] The typicality prerequisite overlaps with the adequacy of the class representative requirement because "in the absence of typical claims, the class representative has no incentive to pursue the

claims of the other class members." 1 Rubenstein, *supra*, § 3:32 (5th ed.). In determining a class representative's adequacy, two main considerations are taken into account: whether a conflict of interests exists between the proposed representative and the class, and whether the proposed representative is qualified to serve as the class representative, by considering factors such as her knowledge of the case. *Id.* at § 3:54.

[¶ 69] When determining whether the representative parties will fairly and adequately protect the interests of the class, N.D.R.Civ.P. 23(c)(2) requires the court find that:

(A) the attorney for the representative parties will adequately represent the interests of the class;

(B) the representative parties do not have a conflict of interest in the maintenance of the class action; and

(C) the representative parties have or can acquire adequate financial resources, considering Rule 23(q), to assure that the interests of the class will not be harmed.

[¶ 70] Here, the district court again points to the issue of commonality to support its determination that Baker is not a fair and adequate representative of the class because "her contract, and her remedy is hers alone." This does not address the criteria for adequacy of representation. The court did not make a finding that Baker's attorney would not adequately represent the interests of the class, it did not find that a conflict of interest exists between Baker and the class, and it did not make a finding regarding Baker's financial resources.

[¶ 71] Having concluded the district court misapplied the law, we are left to determine how to proceed on remand. In *Rogelstad,* this Court reversed and remanded with instructions to certify the class action. 226 N.W.2d at 378–79. More recently in *Klagues,* 2002 ND 59, ¶ 22, 643 N.W.2d 45, this Court, after determining the district court incorrectly analyzed three of the thirteen sub-factors in granting class certification, remanded the case for a determination of certification based on a correct consideration of the thirteen sub-factors. We follow the approach taken by *Klagues,* and remand the order denying class certification with instructions to reevaluate the certification factors.

## IV

[¶ 72] We reverse the district court's ruling denying class certification and remand with instructions to reconsider the factors in light of our holding.

[¶ 73] DALE V. SANDSTROM, J., concurs.

GERALD W. VANDE WALLE, C.J., concurs in the result.

CROTHERS, Justice, dissenting.

[¶ 74] I respectfully dissent. I disagree with reversal of the order denying class certification because Baker failed to challenge the district court's findings on one of the four mandatory factors, because the majority incorrectly applies the commonality factor and because several fair and efficient adjudication sub-factors are misconstrued.

[¶ 75] The proponent of class certification must establish four factors, with one factor being determined using thirteen non-exclusive sub-factors. N.D.R.Civ.P. 23(b)(2); *Mann v. N.D. Tax Comm'r,* 2007 ND 119, ¶ 32, 736 N.W.2d 464 (identifying the four requirements for certification as numerosity, commonality, fair and efficient adjudication and an adequate class representative). All four factors must be met before a class action can be certified.

·*Mann,* at ¶ 32. The numerosity and commonality factors were not addressed by the district court. Majority opinion at ¶¶ 14–15. The factors were not ignored; rather, they apparently were conceded by the defendants as supporting class certification. *Id.* We must presume the district court correctly applied those factors because they were not challenged in the district court or on appeal. *State v. Maurstad,* 2002 ND 121, ¶ 39, 647 N.W.2d 688 ("Because [these issues were] not briefed or raised below, we do not consider [them] on this appeal.") (quoting *Minot v. Freelander,* 380 N.W.2d 321, 324 n. 4 (N.D. 1986)); *State v. Duchene,* 2007 ND 31, ¶ 10, 727 N.W.2d 769 ("Issues not briefed by an appellant are deemed abandoned, and thereby become the law of the case and will not be considered on appeal."); Majority opinion at ¶ 14.

[¶ 76] What was challenged in the district court and on appeal is whether a class action will permit fair and efficient adjudication. Whether Baker is an adequate class representative is not challenged. Both are important; the latter is dispositive.

## I

### Adequacy of Class Representative

[¶ 77] The named plaintiff must convince the district court that he or she adequately represents the putative class. N.D.R.Civ.P. 23(b)(2)(C); *Mann,* 2007 ND 119, ¶ 32, 736 N.W.2d 464. The representative party must adequately represent the claims and interests of each class member who will be foreclosed from bringing their own action and who will be bound by the result in the class proceeding. *See Werlinger v. Champion Healthcare Corp.,* 1999 ND 173, ¶¶ 22–23, 598 N.W.2d 820; Majority opinion at ¶¶ 65–68. The district court found, "Baker does not fairly and adequately represent the class." Baker has

not challenged that finding. Majority opinion at ¶ 65. Notwithstanding this lack of challenge, the majority says the factor should be addressed on remand. *Id.* I respectfully disagree.

[¶ 78] Nothing exists to consider on remand. The district court denied certification because the class representative was inadequate. That finding was not appealed and is law of the case. *Duchene,* 2007 ND 31, ¶ 10, 727 N.W.2d 769. An adequate representative is both constitutionally and practically essential to a class proceeding. Denial of certification should be affirmed on this basis alone because the finding was not challenged and it has not been reversed.

## II

### Commonality is Not at Issue

[¶ 79] The majority reverses the district court's order denying class certification due to what in various places it labels a misapplication of law in its Civil Rule 23 analysis. Below I explain where I disagree with the majority's fair and efficient adjudication discussion. A larger problem with the majority opinion is that it constructs a "commonality" argument that the appellant did not make in this Court or the district court. Majority opinion at ¶¶ 14–15. It then criticizes the district court for analysis it purportedly made but did not. *Id.* at ¶ 26. In the process, the majority improperly recasts and conflates part of the district court's "fair and efficient adjudication" analysis under N.D.R.Civ.P. 23(c) into an apparently overriding and supposedly incorrect application of the commonality factor under N.D.R.Civ.P. 23(a)(2). The majority states:

"Although the court focused its analysis on the fair and efficient adjudication factor and its thirteen sub-factors in N.D.R.Civ.P. 23(c)(1)(A)–(M), the substance of the court's reasoning under

each sub-factor primarily focused on the inadequacy of common questions of fact. Because individual differences in treatment or potential damages with respect to the various vehicle contracts does not defeat commonality, we conclude the district court erred in applying the law to the thirteen sub-factors of the fair and efficient adjudication factor." .

*Id.* at ¶ 16. I respectfully disagree with both the approach and the conclusion.

[¶ 80] The majority's analysis is misdirected because commonality was not challenged in the district court or on appeal. *Id.* at ¶¶ 14–15. More than harmless dicta, the majority essentially converts the district court's fair and efficient adjudication analysis into a commonality consideration. The majority's conversion is apparent from paragraph 16 discussed above, and from their supposition in paragraph 26:

"There is also some indication the district court operated under the erroneous view that commonality requires both common questions of law *and* fact. The court, apparently referring to commonality, stated, '[w]hile there may indeed be common questions of law regarding usury and compliance with the retail installment sales act, common questions of fact are missing. Each individual contract will need to be reviewed to determine whether any violations of law occurred, and what an appropriate remedy would be.' This is an incorrect interpretation of the law. Only one question of law or fact is required to establish commonality. *Bice [v. Petro–Hunt, L.L.C.],* 2004 ND 113, ¶ 9, 681 N.W.2d 74. While either a single question of law or fact is sufficient, this case presents several questions of both law and fact that are common to the proposed class."

Majority opinion at ¶ 26.

[¶ 81] The district court demonstrated no such confusion regarding commonality.

Other than in a passing reference to the factor, the district court never analyzed the requirement because commonality was conceded, as was elsewhere acknowledged by the majority. Majority opinion at ¶¶ 14–15. Moreover, commonality is a simple inquiry about whether common questions of fact or law exist. Majority opinion at ¶¶ 18–19. The factor is easily satisfied. *Bice v. Petro–Hunt, L.L.C.,* 2004 ND 113, ¶ 9, 681 N.W.2d 74. By comparison, the fair and efficient adjudication factor uses thirteen probing and more exacting inquiries into whether a class proceeding will allow a court to adequately adjudicate all class members' claims while also affording the defendants an opportunity to defend against the action. N.D.R.Civ.P. 23(c).

III

Fair and Efficient Adjudication

[¶ 82] North Dakota Civil Rule 23(c) provides a list of thirteen non-exclusive sub-factors for determining whether class proceedings will provide all parties a fair and efficient adjudication of the controversy. "The trial court must weigh the competing factors, and no one factor predominates over the others." *Rose v. United Equitable Ins. Co.,* 2002 ND 148, ¶ 9, 651 N.W.2d 683. This Court has explained:

"In most cases some of the thirteen factors will weigh against certification and some will weigh in favor. It is for the trial court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. Thus, even if ... [some] of the factors weigh against certification, that does not preclude the court from certifying the class action if,

in its opinion, those factors are outweighed by other factors supporting certification."

*Id.* (quoting *Peterson v. Dougherty Dawkins, Inc.,* 1998 ND 159, ¶ 15, 583 N.W.2d 626). Because the decision is so highly discretionary, the opposite also is true in that a district court could find a majority of sub-factors favor certification but those sub-factors are outweighed by others warranting denial of certification. Thus, class certification is determined by the district court weighing each sub-factor rather than simply counting the number of sub-factors checked "yes" or "no."

[¶ 83] I agree with the substance of the majority's writings on sub-factors (A), (C), (E), (F), (H), (I), (J), (L) and (M). For reasons explained below, I disagree the district court abused its discretion deciding sub-factors (B), (D), (G) and (K). If the inadequacy of the class representative was not dispositive, I would remand for further consideration of sub-factor (F). *See Klagues v. Maintenance Eng'g,* 2002 ND 59, ¶ 22, 643 N.W.2d 45; Majority opinion at ¶ 71.

A

Sub-factor (B): The Risk of Inconsistent Adjudications

[¶ 84] The pertinent rule requires consideration of:

"whether prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for a party opposing the class."

N.D.R.Civ.P. 23(c)(1)(B). The majority concludes the district court misapplied the law. Majority opinion at ¶ 33. I agree the district court failed to use the correct legal analysis. However, the error was invited and reversal is not warranted. *Wagner v. Miskin,* 2003 ND 69, ¶ 15, 660 N.W.2d 593.

[¶ 85] The district court found sub-factor (B) did not favor certification because individual recovery depends on the merits of each individual's claim. It ruled the standards to which the defendants must be held are established by statute and do not vary from plaintiff to plaintiff so that no danger exists of inconsistent or varying adjudications. The risk of inconsistent adjudications is not that some might win their case while others lose theirs. Rather, "[t]he inconsistent and varying adjudications factor in N.D.R.Civ.P. 23(c)(1)(B), only applies to actions in which the non-class party could be sued for different and incompatible affirmative relief, as opposed to actions seeking money damages." *Klagues,* 2002 ND 59, ¶ 13, 643 N.W.2d 45 (citing *Ritter, Laber & Assocs. v. Koch Oil, Inc.,* 2000 ND 15, ¶ 16, 605 N.W.2d 153). "Generally, incompatible standards under N.D.R.Civ.P. 23(c)(1)(B) occur when the party opposing the class certification would be unable to comply with one judgment without violating the terms of another judgment." *Klagues,* at ¶ 13 (citing *Werlinger,* 1999 ND 173, ¶ 50, 598 N.W.2d 820 and 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.41[2][a] (3d ed.1997)).

[¶ 86] The district court did not correctly apply sub-factor (B). However, Baker did not argue for application of the proper legal test. She instead argues about the danger of different outcomes and "a real need for judicial uniformity." When the evidence is viewed through application of the correct law, we have not been shown that separate causes of action would risk inconsistent or varying adjudications creating rulings with which the defendants could not comply without violating other rulings in similar cases. Further, Baker cannot now gain advantage

from his earlier incorrect legal argument. The district court therefore did not abuse its discretion finding this sub-factor does not favor certification due to invited and harmless error.

### B

#### Sub-factor (D): Whether Defendants Have Acted on Grounds that Apply Generally to the Class, so that Final Injunctive Relief or Corresponding Declaratory Relief is Appropriate

[¶ 87] This sub-factor inquires whether the plaintiff seeks injunctive or declaratory relief. N.D.R.Civ.P. 23(c)(1)(D); Majority opinion at ¶ 36. Sub-factor (D) requires that the district court examine "whether a party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." N.D.R.Civ.P. 23(c)(1)(D). Our Rule 23 provides no guidance for application of this inquiry. *See id.* Explanatory Note. No North Dakota or Iowa case explains application of the sub-factor either. The federal class action rule has a similar provision and provides insight into how the sub-factor operates.

[¶ 88] The federal class action rule is structured differently than the Uniform Class Action Rule adopted in North Dakota and Iowa. The application of Federal Civil Rule 23 nevertheless may aid in our application of similar provisions in North Dakota Civil Rule 23. *See Vos v. Farm Bureau Life Ins. Co.,* 667 N.W.2d 36, 44 (Iowa 2003); *Vignaroli v. Blue Cross of Iowa,* 360 N.W.2d 741, 743 (Iowa 1985) (Uniform Class Action Rule may be interpreted by looking to authorities construing similar provisions in the federal class action rule). While the "injunctive relief" inquiry in North Dakota is a sub-consideration of whether class certification will

provide fair and efficient adjudication, the federal rule allows class certification in four situations, one of which is in an injunction action when the party opposing the class has acted or refused to act on grounds applicable to the whole class. *See* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:1 (5th ed.2012) ("Rule 23(b) identifies four situations in which representative litigation is appropriate."). Professor Rubenstein explains the difference in the four types of federal class proceedings and their procedural requirements:

"Rule 23(b)(1)(A) describes the use of a class action in a situation where the prosecution of 'separate actions by or against individual members of the class would create a risk of incompatible standards of conduct for the adverse party due to inconsistent or varying adjudications with respect to individual members of the class.' This category is somewhat opaque and rarely utilized. The category generally does *not* cover situations in which multiple plaintiffs sue a single defendant for money damages—for instance, for a mass accident or a product defect—with some plaintiffs prevailing and some losing; the fact that the defendant must pay some claimants but not others does not create the 'incompatible standards of conduct' at which the Rule is aimed. Rather, Rule 23(b)(1)(A) is reserved for that subset of cases in which the different adjudicatory outcomes would put the defendant in a true bind—for example, if bondholders sued to have a bond declared invalid and some won and some lost; in that circumstance, the municipality would not know how to proceed with regard to its outstanding obligations. The (b)(1)(A) class action is often referred to as an 'incompatible standards' suit.

"Rule 23(b)(1)(B) establishes the propriety of a mandatory class action in situations where an individual judgment, 'while not technically concluding the other members, might do so as a practical matter.' This occurs, for example, when many plaintiffs are likely individually to sue a single defendant whose funds are so limited that they are incapable of satisfying all the potential claimants. A class action in these circumstances assures fairness by providing an equitable, pro rata distribution of funds among all claimants. As this situation is its paradigm case, the (b)(1)(B) class action is often referred to as a 'limited fund' class action.

"Rule 23(b)(2) authorizes a class action when a party has taken or refused to take action with respect to a class, and 'final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.' This category is typically employed in cases seeking structural injunctions and other actions not seeking money damages; indeed, the Supreme Court has held that monetary relief is generally not available in (b)(2) class actions. The (b)(2) class action is often referred to as an 'injunctive' class suit or, because of its frequent use in the field, as a 'civil rights' class action.

"Finally, subdivision (b)(3) permits a class action in all other circumstances where the prerequisites of Rule 23(a) are met, and two additional criteria are satisfied: (1) that questions of law or fact common to members of the class *predominate* over any questions affecting only individual members and (2) that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy. This is the most common category for money damage cases, especially small claims class actions, and hence is commonly referred to as the 'money damage' class action.

"While each part of Rule 23(b) describes a different type of fact situation, a single case may be certified under more than one part of the rule. That said, Rule 23 inscribes a critical distinction between 23(b)(1) and (b)(2) class actions on the one hand and 23(b)(3) class actions on the other. Specifically, Rule 23(c) requires that class members be given notice of the certification of a money damage class action brought under Rule 23(b)(3) and the right to opt out of such a case; the Supreme Court has similarly held that the Due Process Clause requires these special protections in money damage cases. Rule 23(b)(1) and (b)(2) class actions, by contrast, permit, but do not require, a court to give notice to class members of the certification of such a case, nor do they require that the court provide the class members with an opportunity to opt out; few courts accept the invitation. This is so because class actions under these parts of Rule 23(b) are often thought of as more organic cases in which the class's interests are so cohesive that opting out would be a non sequitur. For example, in a school desegregation case like *Brown v. Board of Education,* [347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954)] the plaintiffs' success would likely lead to the integration of the public schools; it is not clear how any member of the plaintiff class could 'opt out' of such an action. Nonetheless, most circuits permit a court overseeing a class action to enable opt-out rights in (b)(1) and (b)(2) cases in certain circumstances or enable a court to certify a non-opt-out class under (b)(2) for the injunctive aspects of the case and an opt-out class under (b)(3) for the monetary aspects. Because (b)(1) and (b)(2) cases generally do

not enable litigants to opt out, they are often referred to as 'mandatory' class actions.

"It is commonplace to state that notice is also discretionary in (b)(1) and (b)(2) class actions, but in fact, that is misleading: notice that such a case that has been *certified* is *discretionary* primarily because there is no corresponding opt out right, but a court is *required* to provide notice to the class that such a case has *settled* (and if attorney's *fees* are requested)—and class members are ensured an opportunity to voice concerns with these proposals in writing or in person at a fairness hearing. In this sense, class certification assists class members in mandatory classes by providing a mechanism for their concerns to be voiced to a court that is about to issue a judgment likely to affect their interests and to foreclose their rights."

2 Rubenstein, *supra*, § 4:1 (footnotes omitted). Regarding injunctive relief verses monetary claims, Professor Rubenstein states:

"Rule 23(b)(2) requires that 'final injunctive relief or corresponding declaratory relief' be appropriate. In the vast bulk of cases, it is easy to ascertain whether the remedy that the plaintiffs seek is injunctive, hence enabling (b)(2) certification, as opposed to monetary, which generally bars certification under Rule 23(b)(2)."

2 Rubenstein, *supra*, § 4:31 (footnotes omitted).

[¶ 89] Baker voluntarily dismissed her federal law claims with injunctive relief remedies, causing this case to be remanded from federal to state court after the federal court refused to certify a class. Defendant Auto, Inc. made clear in its state district court briefing on class certification that "[b]ased on the very wording of her motion, it is presumed that plaintiff's motion for class action certification is based on the claims in the amended complaint (usury and RISA) and *not* the claims set forth in plaintiff's original complaint." Baker confirmed Auto Inc.'s statement and agreed she dismissed claims for which injunctive relief was sought.

[¶ 90] The district court found this subfactor did not favor class certification because an individualized determination was needed on each retail installment contract to decide whether each contract violated the law. The court reasoned that the defendants are obligated to follow the law, and to the extent the defendants have violated the law, the individual who suffered harm may rely on statutory remedies to redress the violation. The court also stated it would not enjoin a party from breaking the law.

[¶ 91] I believe the district court reached the correct conclusion, but perhaps not based on the correct law, because it is not clear the district court analyzed this sub-factor in the context of whether Baker sought injunctive or declaratory relief. Normally, the misapplication of a fair and efficient adjudication factor requires remand. *Klagues*, 2002 ND 59, ¶ 22, 643 N.W.2d 45; *Ritter, Laber and Assocs. v. Koch Oil, Inc.*, 2000 ND 15, ¶ 31, 605 N.W.2d 153; *Werlinger*, 1999 ND 173, ¶ 56, 598 N.W.2d 820; *cf. Rogelstad v. Farmers Union Grain Terminal Ass'n, Inc.*, 226 N.W.2d 370, 378 (N.D.1975) (reversing for certification of class after district court erroneously applied predecessor Rule 23 certification factors). Here, however, the plaintiff did not seek injunctive relief. The result is that, as a matter of law, this consideration could not be decided in favor of class certification and the error is harmless. *See Investors Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 40, 788 N.W.2d 312 ("[W]e will not set aside a correct result merely because the district

court's reasoning is incorrect if the result is the same under the correct law and reasoning.") (citation and quotation marks omitted). On the record before us and as a matter of law, the district court's negative findings on this consideration were not an abuse of discretion because Baker is not seeking declaratory or injunctive relief and this sub-factor does not favor certification.

### C

### Sub-factor (G): Whether a Class Action Offers the Most Appropriate Means of Adjudicating the Claims and Defenses

[¶ 92] Sub-factor (G) looks at both claims and defenses to determine whether a representative class proceeding provides the most appropriate means of adjudication. N.D.R.Civ.P. 23(c)(1)(G). The district court found sub-factor (G) did not favor certification because the court must look at both the claims and the defenses. The district court earlier acknowledged that Baker presented a common legal claim but that any determination of facts would be particularly individualized. Under this sub-factor, the district court explained it could not issue a blanket finding that the defendants violated the usury law in all 500 contracts "either because the fluctuating formula required for determining usury removes a contract from the ambit of the usury law, or the defendants properly disclosed everything required by the retail installment sales act. . . ." I believe the district court's findings demonstrate neither a misapplication of law nor an absence of facts supporting the ruling. Therefore, the district court did not abuse its discretion by finding this consideration did not favor class certification.

[¶ 93] The majority's reversal provides the district court no guidance on remand, and instead apparently holds that sub-factor (G) is satisfied as a matter of law any time putative class members have numerous small claims. I respectfully submit *that* is a misapplication of law. Such a holding means commonality predominates over all other factors and sub-factors. Such a holding obliterates the district court's discretion to select the "most appropriate" method of trial for hundreds of claims and up to 500 defenses. Such a holding also ignores our highly differential standard of review. *Rose*, 2002 ND 148, ¶ 5, 651 N.W.2d 683 ("The trial court's decision to certify a class action will not be overturned on appeal unless the court has abused its discretion.") (citations omitted).

### D

### Sub-factor (K): Whether Management of the Class Action Poses Unusual Difficulties

[¶ 94] Sub-factor (K) requires determination "whether management of the class action poses unusual difficulties." N.D.R.Civ.P. 23(c)(1)(K). The majority acknowledges that little has been written in North Dakota about "manageability." *See* Majority opinion at ¶ 57; *Old Broadway Corp. v. Hjelle*, 411 N.W.2d 81, 85 (N.D.1987) (holding the district court did not abuse its discretion in denying certification due to manageability concerns where the subject of litigation was often-changing highway billboard advertising).

[¶ 95] The federal class action rule also has a "manageability" prong. The federal rule considers whether class proceedings are "superior" to other methods of adjudication. Fed.R.Civ.P. 23(b)(3)(D). "The manageability factor 'encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit.'" 2 Rubenstein, *supra*, § 4:72 (footnote omitted); Majority opinion at ¶ 58. Rather than permitting the district court to weigh "the

whole range of practical problems," the majority in effect adopts a presumption that a class proceeding is manageable. That is a mistake. I submit the question is better left to the district court judge who will be stuck managing the class and the appellate court should adhere to its highly differential standard of review. *Rose*, 2002 ND 148, ¶ 5, 651 N.W.2d 683.

[¶ 96] Here, the district court found sub-factor (K) did not favor class certification. The court reasoned that every member of the alleged class has a different, individual claim. "There is not one action which will control the outcome for the entire class, but potentially 500 or more 'mini-actions' to be managed." The court's reasoning was nearly the same for finding common questions did not predominate. According to *Newberg*, predominance and manageability are closely linked. 2 Rubenstein, *supra*, § 4:72; Majority opinion at ¶ 58. The district court recognized under its analysis of sub-factor (M) that the putative class consists of small claims, which *Newberg* acknowledges supports class treatment. 2 Rubenstein, *supra*, § 4:69. The district court considered these many and conflicting facts and reached a conclusion. It did not misapply the law. Rather, it decided this sub-factor based on the correct law and on facts in the record. Because the result was within the range of permissible options, the district court did not abuse its discretion in finding management of this class poses unusual management difficulties.

[¶ 97] I note the majority also cites the Rubenstein Treatise for the principle that manageability and predominance are closely tied. Majority opinion at ¶ 58 ("[T]he manageability concern often simply echos the predominance analysis. Therefore, courts generally hold that if the predominance requirement is met, then the manageability requirement is met as well.")

(quoting 2 Rubenstein, *supra*, § 4:72). Here, the majority affirms the district court's finding that sub-factor (E) on predominance did not favor certification. Majority opinion at ¶¶ 40–43. Yet the majority inexplicably silences the "echo" between predominance and manageability when concluding the district court abused its discretion on manageability. I believe the majority's unexplained conflicting results on these two sub-factors needlessly dilutes our precedent and will confuse both the trial bench and the bar.

### E

### Conclusion

[¶ 98] In conducting its analysis of the thirteen fair and efficient adjudication considerations, the district court found, "[T]here may indeed be common questions of law regarding usury and compliance with the retail installment sales act, common questions of fact are missing." It also found, "Allowing a class action to proceed will be no more efficient than requiring individual lawsuits, since each claim will rise or fall on its individual merits." Throughout its order, the district court provided a comprehensive review and an in-depth and pertinent analysis. In the end, nine sub-factors weighed against certification, three weighed in favor and one weighed evenly. The district court did not deny certification based on a numerical checkoff but instead provided due consideration to each sub-factor as applied to the facts of the case. Nothing in the district court's twelve pages of analysis appears unreasonable, arbitrary or unconscionable. Other than was noted for sub-factors (D) and (F), the district court did not misinterpret or misapply the law. Those errors were either harmless, invited or both. Accordingly, under our highly deferential standard of review, and given the district court's analysis and findings of fact, the

court did not abuse its discretion and we should affirm rather than substitute our judgment and reverse.

## IV

### Review of Case Merits

[¶ 99] The majority states the district court must decide whether to certify a class "without delving into the merits." Majority opinion at ¶ 9. I agree that is a correct, but incomplete, statement of the law. When discussion of the district court's inquiry into whether common questions predominate, this Court held, "[A] pragmatic assessment of the entire action and all of the issues is involved in making the determination." *Werlinger*, 1999 ND 173, ¶ 33, 598 N.W.2d 820. When determining the fair and efficient adjudication sub-factors generally and the predominance factor in particular, courts "require sufficient information with which to form a reasonable judgment." *Iowa Annual Conference of the United Methodist Church v. Bringle*, 409 N.W.2d 471, 474 (Iowa 1987). "[I]t was appropriate—even necessary—for the trial court to consider the nature of the claim asserted in ruling on the request for certification." *Id.* Sub-factor (G) on the appropriate means of adjudication makes clear that the court's understanding of the case must include consideration of both the claims and the defenses. N.D.R.Civ.P. 23(c)(1)(G). Therefore, while the district court cannot and should not decide at the certification stage whether the plaintiff's claims are meritorious, the district court nevertheless must fully understand the legal nature of the claims and defenses to intelligently decide whether the requirements are met for allowing class certification.

[¶ 100] As indicated above, by applying our abuse of discretion standard of review, I conclude the district court did not err in denying class certification. I would affirm.

[¶ 101] LISA FAIR McEVERS, J., concurs.